### DAVIS v. TURNER et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1903.)

#### No. 458.

1. BANKRUPTCY—DEBTS PROVABLE AGAINST PARTNERSHIP—NOTE SIGNED BY INDIVIDUAL PARTNERS.

A note signed by the individual members of a bankrupt partnership, although under seal, may be shown by extrinsic evidence to be in fact a partnership obligation, and where it is shown that it was so intended, and was given for money lent to the firm and used in the firm business, it may be proved against the partnership estate in bankruptcy.

2. CHATTEL MORTGAGES—VALIDITY—INFORMALITY OF INSTRUMENT.

In general, no particular words are required to constitute a mortgage of personal property. The most informal instruments will be regarded in law as chattel mortgages if they show that a sale was made as security, and in equity any sale of chattels as security for a debt is regarded as a mortgage, although the fact that such was the purpose of the sale be not expressed by the instrument of sale, if it be proved by evidence aliunde.

3. SAME—MORTGAGE OF PARTNERSHIP PROPERTY.

A mortgage of partnership goods as security for a partnership debt is not invalid because signed by the partners individually, nor because of the addition of a seal to the individual names.

4. SAME—SUFFICIENCY OF DESCRIPTION.

The description in a chattel mortgage, signed by a number of persons, on "all the goods in the store where they are doing business, in E. City, N. C.," may be supplemented by parol evidence to identify the goods; and the mortgage is not void for indefiniteness of description where it was shown that the signers were associated in mercantile business as partners, and had but one place of business, which was in Elizabeth City, N. C., and that the stock of goods referred to was the one in their store at that place.

5. SAME—SALE OF GOODS BY MORTGAGOR.

A chattel mortgage given by a firm of merchants on their stock of goods is not void for fraud because the mortgagors remained in possession for a few weeks and carried on their business as usual, where there was no provision therefor in the mortgage, and there is uncontradicted testimony of the parties that the transaction was in good faith.

6. SAME—DATE OF TAKING EFFECT—RECORD.

Under the law of North Carolina, which makes a mortgage effective from the date when it is filed for record, a chattel mortgage given by bankrupts is good as against their other creditors where it was filed for record on the day before the filing of the petition in bankruptcy.

7. BANKRUPTCY—LIENS—MORTGAGE GIVEN FOR PRESENT CONSIDERATION.

A chattel mortgage, given by an insolvent firm in good faith within four months prior to its bankruptcy, is not void under the bankruptcy act, where it was given for a present loan of money which was used in paying debts of the firm, and was duly recorded so as to become effective prior to the bankruptcy, but is expressly protected by section 67d [U. S. Comp. St. 1901, p. 3449].

---

¶ 4. See Evidence, vol. 20, Cent. Dig. § 2127.

Appeal from the District Court of the United States for the Eastern District of North Carolina.

Thos. C. Jones, R. H. Raper, W. S. Cartwright, and John F. Engle were partners under the firm name of Jones, Raper & Co., doing business as merchants in Elizabeth City, Pasquotank county, in the Eastern District of North Carolina. On the 28th day of March, 1902, the said firm filed a voluntary petition in bankruptcy, and were on the same day adjudged bankrupt, within the true intent and meaning of the acts of Congress relating to bankruptcy. Among the debts offered for proof against the estate of said bankrupts was the following note:

"$2,500.00. January 1st, 1902.

"For value rec'd (money) we, or either of us, promise to pay John L. Hinton two thousand and five hundred dollars, with interest, after date, said amount to be paid by the 1st of March, 1902. Witness our hands and seals.

| "R. H. Raper. | [Seal.] |
| "Thomas C. Jones. | [Seal.] |
| "Florence E. Jones. | [Seal.] |
| "W. S. Cartwright. | [Seal.] |
| "John F. Engle. | [Seal.] |

"Witness: W. T. Davis."

There were some credits on this note, and the balance claimed to be due was $2,325. Accompanying the proof of this debt was a deed in trust, executed by R. H. Raper, Thomas C. Jones, W. S. Cartwright, and John F. Engle severally, under seal, on the 1st of January, 1902, to secure the payment to John L. Hinton of the sum of $2,500, evidenced by a bond of even date with the said deed. The property conveyed in the said deed was described as follows: "All the goods in store where they are doing business, in E. City, N. C." Indorsed on the deed was the certificate of the register of deeds of Pasquotank county that the same was filed for registration on the 27th day of March, 1902, at 6 o'clock p. m., and registered in the office of the register of deeds of Pasquotank county, N. C., the 28th of March, 1902, at 8 o'clock a. m., in Book 24, page 374. The debt evidenced by this note and mortgage was in the hands of Mrs. G. M. Davis, and claimed by her as her property, by reason of an assignment from John L. Hinton to her husband, W. T. Davis, and from W. T. Davis to her.

There seems to have been objection, though it does not appear in the record, to admitting this claim to proof as a debt against the estate of the bankrupts, on the ground that it was not a partnership debt. The referee, however, proceeded to take testimony with reference to the matter, and, upon the conclusion thereof, filed an opinion, in which he adjudged that the bond signed individually under the separate signatures and seals of R. H. Raper, T. C. Jones, W. S. Cartwright, Florence E. Jones, and J. F. Engle, the contract being clearly expressed and no evidence of fraud in its execution, with no evidence on its face that Jones, Raper & Co. was a party to its execution, cannot be proved against the partnership assets of Jones, Raper & Co. until the partnership debts have been paid in full; and, further, that the deed in trust given for its security was void, first, for want of proper description and general vagueness, second, for failure of registration, third, on the ground of legal fraud in its execution. The holder of the claim petitioned the district judge to review the decision of the referee, and, upon the hearing, the judge affirmed the referee in his findings of fact and conclusions of law; and thereupon the case was brought, by appeal of claimant, to this court. The note was introduced, also the mortgages.

The evidence taken before the referee, as set forth in the record, was substantially as follows:

W. T. Davis testified that he witnessed the note for $2,500; that the signatures to it were those of R. H. Raper, Thomas C. Jones, W. S. Cartwright, and John F. Engle; that he saw all of them sign it except Florence E. Jones, and that her husband, T. C. Jones, signed her name; that the note is now the property of Mrs. G. M. Davis, the wife of the witness; that it was assigned to witness by John L. Hinton without recourse; that he gave his own note

to Hinton, for $3,000, for this note; that he assigned it to his wife in consideration of $500; that he knew the goods described in the mortgage, and that they were the goods in the store of Jones, Raper & Co., on the corner of Main and Water streets, in Elizabeth City; that he was not solvent when he gave Hinton the $3,000 note; that he negotiated the loan from Hinton to Jones, Raper & Co., and the latter agreed to pay him $200 for the service, but no part of this sum had been paid; that the mortgage was delivered to him on the 1st of January, 1902, and that he did not have it recorded, because Mr. Hinton had never told him to; that Mr. Hinton gave him the mortgage to keep; that there was no agreement between witness and Jones, Raper & Co., or any one of the firm, that the mortgage should not be recorded; that the mortgage was not filed for registration until the 27th day of March, 1902; that Jones, Raper & Co. remained in possession of the goods, and continued business, after the execution of the note and mortgage, until the filing of the petition in bankruptcy; that very few goods were sold from the stock within the time, and that the stock on hand at the time of the adjudication was the same as when the note and mortgage were executed; that neither one of the partners in the firm was solvent on the 1st of January, 1902, and Mr. Hinton knew it—their property consisted only of their stock of goods in the store; that they were being pressed for money at the time, and he negotiated this loan from Mr. Hinton at their request, in order to get money to make payment upon their debts.

R. H. Raper was the next witness. He testified that he signed the note and mortgage introduced; that they were executed at the time they purported to be; that T. C. Jones, R. H. Raper, W. S. Cartwright, and J. F. Engle composed the firm of Jones, Raper & Co.; that the money borrowed from Hinton, for which the note was given, was borrowed for the use of Jones, Raper & Co., and was used for the benefit of the company in paying its debts. Witness identified this check which was introduced:

"No. ———.                          Elizabeth City, N. C., Jan. 1st, 1902.

"First National Bank of Elizabeth City pay to the order of Jones, Raper & Co. ($2,500.00) two thousand and five hundred dollars.

"[Signed]    John L. Hinton."

And stated that that was the check which Hinton gave when the note and mortgage were executed; that the check was indorsed by Jones, Raper & Co., deposited in the bank to their credit, and checked out by the firm in making payments to creditors; that Jones, Raper & Co. received the full amount of the check credited on account of the firm; that at the time the firm was doing business in a store on the corner of Main and Water streets, in Elizabeth City; that they had no other store in Elizabeth City, and that the mortgage was upon the stock of goods belonging to the firm in that store; that the value of the stock at the time the mortgage was given was thirteen or fourteen thousand dollars, and at the time the petition in bankruptcy was filed ten or eleven thousand dollars; that after the execution of the note and mortgage, and before the petition in bankruptcy, very few goods were bought by the firm, probably about two or three hundred dollars' worth; that the stock of goods consisted of shoes, clothing, hats, caps, and gents' furnishing goods; that there had been no additions to the stock after the note and mortgage were given; and that the goods in stock at the time of the adjudication were the same as at the time of the execution of the note and mortgage.

It was admitted that the mortgage, which was signed under seal by R. H. Raper, T. C. Jones, W. S. Cartwright, and J. F. Engle, was filed for registration on the 27th day of March, 1902, at 6 o'clock p. m., and was registered in the office of the register of deeds for Pasquotank county, N. C., on the 28th day of March, 1902, at 8 o'clock a. m.

Jones, Raper & Co. set forth in the schedule filed with their petition in bankruptcy unsecured debts of the firm due to various persons, aggregating nearly $9,000.

E. F. Aydlett, for appellant.
P. H. Williams, for appellees.

Before GOFF, Circuit Judge, and BRAWLEY and BOYD, District Judges.

BOYD, District Judge (after stating the facts). There are two questions presented in this case, the first being whether the claim of the petitioner, Mrs. G. M. Davis, is a partnership debt of the firm of Jones, Raper & Co., and provable as such against their estate in bankruptcy; and the second, whether the mortgage given to secure the said debt is valid and constitutes a lien upon the stock of goods of the bankrupt firm on hand at the time of the petition and adjudication. It is true that the obligation on its face imports individual liability on the part of the several persons who signed it, but is this conclusive as to the character of the debt, or is it susceptible of explanation by proof showing that the debt is in fact one for which the firm is liable? The doctrine of the common law that the sacredness of a seal cannot be invaded, and the consideration of a sealed instrument explained by parol testimony, has, in a great measure, passed beyond the realm of legal discussion in this country, and instead there has been accepted a doctrine more in harmony with the principles of justice and equity.

Pomeroy, in his work on Equity Jurisprudence, vol. 1, § 70, treating of the effect of a seal upon an instrument, says:

"Generalizing this particular rule, equity never gave the consequence to a seal which the common law gave; it always looked beyond this mere form into the real intentions of the parties, and rejected the dogma that a seal can only be discharged by an act of equal degree. These equitable doctrines have been transferred into the law of the United States."

The same author, treating on the subject, in section 384 of volume 1, says:

"Other doctrines of equity, by which the strict terms of contract and the somewhat arbitrary rules of law relating thereto are disregarded in order to promote the ends of justice, may also be left, at least partly, to this principle of looking into the real intent rather than the form."

In Perry v. Hill, 68 N. C. 417, it is held:

"The general rule that a written contract cannot be varied by parol is not denied, but it is not sought here to add to, alter, or contradict the writing in any particular, but only to show what was the consideration for the loan of the money for forty days without interest, of which loan the writing is evidence. The rule has never been held to exclude proof of the consideration of a written promise to pay money, at least when none is recited." Citing Robbins v. Love, 10 N. C. 82, and Nichols v. Bell, 46 N. C. 32.

In Lane v. Wingate, 25 N. C. 326, it is held that a person is not estopped by a bill of sale under seal, from himself to another, for property, in which he acknowledges to have received the price, from showing that the price of the property was a consideration of the agreement declared on; and in Robbins & Savage v. Love, 10 N. C. 82, which was a case in which A., being indebted to B. in the sum of $1,000 for goods sold, conveyed to B. by deed a house and lot to satisfy the debt, and the consideration expressed in the deed was the $1,000. B. sued A. for the debt, and the latter proposed to prove, by the subscribing witness to the deed, that it was made to and accepted by the plaintiff in payment of the goods. The court below refused to hear the testi-

mony, because it would contradict the written agreement and the deed. In passing upon this question, Hall, J., says:

"I think the defendant is at liberty to prove the contract, that it was agreed that the conveyance of the house and lot should be a discharge of the debt due for goods sold, notwithstanding the only consideration set forth in the deed was the one thousand dollars. It is no contradiction of the deed, but it is proving a distinct fact."

These principles have not been confined to individual transactions, but have also been applied to partnerships. In the case of In re Warren, Fed. Cas. No. 17,191, 2 Ware, 322, it is held that, where all the members of a firm have incurred a written obligation by signing their respective individual names instead of the firm name, it is merely a presumption that the obligation is individual rather than firm, but the presumption may be rebutted if in fact it is a firm obligation. The Supreme Court of Tennessee, in Puckett v. Stokes, 61 Tenn. 442, lays it down that, "where only one member of a firm signs his individual name to a note, the firm will be bound thereby, as one of the partners made the contract, and the credit was given to them as such." The doctrine is upheld in Hubbell v. Woolf, 15 Ind. 204, Buckner v. Lee, 8 Ga. 285, Farmers' Bank v. Bayliss, 41 Mo. 275, and in many other cases which might be cited, all to the effect that a note signed by the members of a firm in their individual names can be recovered against the partnership, when it is shown affirmatively that it was a partnership transaction and the partnership received the benefit of it.

In the case under consideration the bond for $2,500 was signed by the four members of the firm of Jones, Raper & Co., each with his individual name and seal. The bond was given to J. L. Hinton, and bears date the 1st of January, 1902. Hinton's check for the amount of $2,500, of even date with the bond, drawn upon a bank in Elizabeth City, N. C., in favor of Jones, Raper & Co., indorsed by Jones, Raper & Co., is among the exhibits in the case.

There were two witnesses, and only two, examined. These were W. T. Davis and R. H. Raper. Davis testified that he negotiated the loan from Hinton to Jones, Raper & Co.; that he did so at the instance of the firm, and for the firm; and that the loan was made by Hinton to the firm, and that the $2,500 bond was given therefor. Raper testified that, acting for the firm, which was in need of money to meet its business obligations, he secured the loan of $2,500, through Davis, from Hinton; that the check of Hinton was delivered to him, payable to Jones, Raper & Co.; that he indorsed the name of the firm on the back of it and deposited it in the bank, where the full amount was entered to the credit of the firm, and it was drawn out by the firm in the due course of its business, and used in making payments upon the firm's debts. In addition to this, it is shown that, on the day that the bond for $2,500 was given, the four members of the firm executed a mortgage to Hinton, wherein was conveyed the stock of goods of the firm as security for the payment. There was no testimony whatever to contradict these facts, and the referee finds, as an additional fact, that there was no fraud in the execution of the bond. The referee, however, in his report, which was confirmed by the court in bankruptcy, holds as a matter of law that, because the bond is signed by

120 F.—39

the members of the firm individually, under their separate signatures and seals, it is an individual debt, and cannot be proven, as against the partnership assets of Jones, Raper & Co., until all the partnership debts have been paid in full. In this conclusion we think there is error, and that, although the paper bears the signatures and seals of the individuals composing the firm, yet, from the uncontradicted evidence, it appears affirmatively and fully that the debt was contracted by the firm, for its benefit, and that the whole proceeds of the note were used in the due course of the partnership business. The undisputed evidence in the case establishes the fact beyond controversy that the bond to Hinton was for a firm debt, and we so hold, and that, as such debt, it is provable against the estate of the partnership in bankruptcy.

In considering the validity of the mortgage executed by the members of the firm of Jones, Raper & Co. at the same date as the bond, several questions arise. As shown by the statement of facts, the referee reported to the court as a conclusion of law that the mortgage, as against the partnership of Jones, Raper & Co., was void, first, for the want of proper description and general vagueness, second, for failure of registration, and third, for legal fraud, inasmuch as the failure to record was coupled with the fact that the parties executing the mortgage were allowed to remain in possession of the stock of goods, and conduct the sale and disposition of the same, and this conclusion of the referee was confirmed by the District Court.

It is evident that the instrument set forth in the record is not the work of an experienced draughtsman. The parties used a blank intended for the conveyance of real estate as security for debt in making the mortgage, but this does not invalidate it. It is set out in the face of the paper that the indenture is made on the 1st of January, 1902, between R. H. Raper, Thomas C. Jones, W. S. Cartwright, and J. F. Engle, of Elizabeth City, Pasquotank county, state of North Carolina, of the first part, and John L. Hinton. It is recited, in substance, that the parties of the first part are indebted to John L. Hinton in the sum of $2,500, evidenced by their bond of even date, and bearing interest from date at 6 per cent. per annum, and due and payable on the 1st of March, 1902. It also states, in substance, that the said parties are anxious to secure the payment of the bond at maturity, and, for this consideration, and for the sum of $10, they sell and convey "all the goods in store where they are doing business, in E. City, N. C." In the power of sale, which follows in the blank form, the word land is left, instead of inserting the goods described before, but there is a provision, if default be made in the payment of said bond, that a sale may be had, and, out of the moneys arising from the sale, the bond and interest thereon are to be paid. In general, no particular words are required to constitute a mortgage of personal property; all that is requisite in a formal mortgage is that there should be a sale of property by the mortgagor to the mortgagee as security for the payment of the debt. The most informal instruments will be regarded in law as mortgages, if they show that a sale was made as security, and in equity any sale of chattels as security for a debt is regarded as a mortgage, although the fact that such was the purpose of the sale be not expressed:

by the instrument of sale, if it be proved by evidence aliunde. Jones on Chattel Mortgages, c. 2, § 34.

As to the effect it may have upon the case by reason of the fact that the parties signed the instrument in their individual names, there is an established principle that any partner may execute a valid mortgage of partnership goods as security for a partnership debt by signing the firm name or the individual names of the members of the firm, and it is immaterial whether he sign the name of each copartner separately or sign the firm name, and the addition of a seal to the individual names does not invalidate the mortgage, because a seal is unnecessary. Jones on Chattel Mortgages, § 46. The learned author, in the further discussion of this principle, lays it down that, although one partner signs the names of the several individuals composing the firm, the acquiescence of the other partners in such a transaction would place the validity of it beyond question, and it does not matter whether the acquiescence be given at the time of the transaction or subsequently. In our case, the names of the several partners were signed each for himself at the time of the execution of the mortgage, and in the mortgage is conveyed all of the goods in store where they are doing business. This would have been sufficient to bind the partnership, although one partner had done the act; certainly it is sufficient where all the partners join in the act. This doctrine is thoroughly discussed and upheld in a very learned opinion delivered by Chief Justice Gray, of the Massachusetts Supreme Court, in the case of Locke v. Lewis, reported in 26 Am. Rep. 631.

The remaining question as to the validity of the mortgage upon its face is as to the sufficiency of the description given of the property conveyed. "All the goods in store where they are doing business in E. City, N. C.," is the description given of the property conveyed by the instrument. R. H. Raper, Thomas C. Jones, W. S. Cartwright, and J. F. Engle are the persons to whom the pronoun "they" refers, because they are named as mortgagors in the conveyance. They were associated together in business at only one place, and, according to the testimony, they were in a building in Elizabeth City, N. C., where they conducted the business of merchants. The stock of goods was in this building at the time of the execution of the mortgage, and was worth about $14,000. At the time of the bankruptcy the stock had been reduced by sales, and was worth ten or eleven thousand dollars, only about $300 worth of goods having been added to it. It has been held that a mortgage on "all the property now in shop occupied by me," in a town named, is not void for uncertainty, but the property may be ascertained by testimony respecting the goods contained in the shop at the time of the delivery of the deed. A mortgage on "all of the tools, stock, and chattels" belonging to the mortgagor, in and about the wheelwright shop occupied by him, is not void for uncertainty. So a mortgage on all the dry goods, boots and shoes, millinery goods and gents' furnishing goods, and stock in trade, now in the store occupied by the mortgagor, is neither fraudulent on its face nor invalid by reason of the generality and indefiniteness of the description. Jones on Chattel Mortgages, § 65. And, whilst it is true that parol evidence is not admissible to

show that property not specifically included in a mortgage was intended to be embraced, yet such evidence is admissible to identify the particular property which the description covers.

In Rountree v. Britt & Vinson, 94 N. C. 104, a mortgage which conveyed, without additional terms, "my entire crop of every description," was held to· be void for uncertainty, but the court says in that case that this difficulty might possibly have been cured by parol evidence offered to apply the description to the subject-matter to be conveyed. And in State v. Logan, 100 N. C. 454, 6 S. E. 398, the Supreme Court of the state, in treating of the subject of sufficiency of description in mortgages, says: "The description is sufficient when it, in terms or by reasonable implication arising from the facts stated in respect to its circumstances, relations, and connections, designates the property so that it can be certainly seen or ascertained. Moreover, such just interpretation must be given to the description as will effectuate the intentions of the parties, if this can be done consistently with the rules of law." In State v. Garris, 98 N. C. 733, 4 S. E. 633, the admissibility of parol evidence to identify property conveyed in a chattel mortgage is also upheld.

In this case we have the aid of the testimony of Raper, a member of the firm, which is undisputed, that his firm was doing business at only one place, and that was in the storehouse occupied by them in Elizabeth City, N. C., and that the stock of goods referred to in the mortgage was the stock of goods in that store. We are therefore of the opinion that the description is sufficient to cover and to convey this particular stock of goods, and that the mortgage is not void for vagueness or uncertainty. The general proposition of the referee that the mortgage is void for fraud, because the mortgagors were allowed to remain in possession of the goods, is untenable; and Cheatham v. Hawkins, 76 N. C. 335, the case which he cites in support of his position, does not sustain it. In that case the Supreme Court of North Carolina held that "a mortgage on a stock of merchandise, containing the provision that the mortgagor is to remain in possession and continue to sell the goods, approaches the verge of being on its face fraudulent, but it is not so"; and it is further held in that case that "the presumption of fraud which arises upon such mortgage can be rebutted by the party claiming under the mortgage." There is no provision in the mortgage under consideration that the mortgagors were to remain in possession of the goods and continue to sell, consequently there is no presumption of fraud arising by reason of the contents of the mortgage itself. It is true that the mortgagors remained in possession of the stock of goods for a short while, and continued to conduct their business as merchants, but both Raper and Davis, the only witnesses examined in the case, testified that the whole transaction was in good faith, and there is no suggestion that any part of the goods or any of the proceeds were diverted or disposed of in any other than the legitimate conduct of the partnership affairs. These facts, which must be accepted as true because they are uncontradicted, are sufficient, in our opinion, to rebut the presumption of fraud, even if such had arisen. The finding by the referee as a fact that the mortgage was withheld

from registration by request of Raper, a member of the firm, or was withheld from registration by agreement between the firm and Hinton or Davis, is not supported by the evidence. On the other hand, both Davis and Raper testified positively that no such request was made, nor was any such agreement entered into. This finding of fact can therefore furnish no basis for a legal conclusion, for upon the undisputed testimony the fact does not exist.

The only remaining question is as to whether or not the mortgage is a lien upon the stock of goods now in the hands of the bankruptcy court for the amount due upon the bond secured. "A mortgage in North Carolina is good against creditors from the time of its delivery to the register; in contemplation of law, it is then duly registered." Parker v. Scott, 64 N. C. 118. "The filing of a deed for registration is in itself conclusive notice." Davis v. Whittaker, 114 N. C. 279, 19 S. E. 699, 41 Am. St. Rep. 793. When the mortgage in question was filed for registration in the office of the register of deeds for Pasquotank county, N. C., on the 27th of March, 1902, by the laws of North Carolina it was then registered so as to be effective against other creditors.

The last contention in opposition to the claim of Mrs. Davis is that the mortgage is void, since it was made within four months of the adjudication in bankruptcy by the parties, who were at that time insolvent, giving a preference to a creditor of the firm. The provision of the bankruptcy law is that a person who, while insolvent, transfers any portion of his property to any one or more of his creditors with intent to prefer such creditors over his other creditors, commits an act of bankruptcy, and such preference is void. The purpose of this provision of the law was to prevent an insolvent person, or a person in contemplation of bankruptcy, from conveying his property so as to prefer one of his existing creditors over another, and thereby avoid an equal distribution of his estate among those to whom he is indebted; but this does not apply to a case where a person, although in debt beyond his ability to pay, conveys property in good faith as security for a present loan to be used in the due course of his business.

The national legislature, in view of the fact that transactions would arise where those engaged in business, and being in debt probably beyond their ability to pay at the time, would have occasion to pledge property to raise means, in enacting the bankrupt law, provided for just such emergencies in the following provision:

Sec. 67d. "Liens given or accepted in good faith, and not in contemplation of or in fraud upon this act. and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act." [U. S. Comp. St. 1901, p. 3449.]

This would seem to settle the point in question. The previous bankrupt act contained, substantially, a provision similar to that in the present law relative to the transfer of property in order to prefer a creditor, but did not make any exception for transactions based upon present consideration; and yet under that act it was held that, where the debtor in good faith makes a transfer for value given at the time, or in pursuance of an agreement made when the consideration passed,

such conveyance will not be an act of bankruptcy. Blumenstein's Law and Practice in Bankruptcy, 96, and authorities there cited.

The evidence in this case shows that the loan from Hinton to Jones, Raper & Co. was in good faith; that the money was used in the business of the firm in making payments upon its debts. The mortgage was given to secure the loan at the time it was made. The transaction is therefore not violative of the provisions of the bankrupt act, nor is the lien secured by the mortgage void as against the other creditors of the copartnership. For the reasons stated, we are of the opinion, therefore, that the claim held by Mrs. Davis is a partnership debt of Jones, Raper & Co., and provable against the estate; that the mortgage sufficiently conveys the stock of goods belonging to said firm as security for the payment of said debt; and that the debt and mortgage constitute a lien upon the stock of goods in the hands of the trustee, to be discharged in priority to the unsecured creditors.

The case is therefore remanded to the Court of Bankruptcy for the Eastern District of North Carolina, with directions that a decree in accordance with this opinion be entered, and the judgment of the District Court, sitting in bankruptcy, is reversed.