In re CULVER et al.

(District Court, D. Minnesota, Sixth Division. December 1, 1909.)

BANKRUPTCY (§ 354*)—PARTNERSHIP—MARSHALING AND DISTRIBUTION OF ASSETS.

Evidence considered, and *held* to establish that two bankrupts were at the time of their bankruptcy, and had been for more than 20 years, general partners in all their business; that all of their property, whether held

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the name of the firm or of either or both partners, was partnership property, and all of their debts partnership debts, whether evidenced by obligations of the firm or either or both partners.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 555–559; Dec. Dig. § 354.*]

In the matter of M. A. and G. H. Culver, partners as Culver Bros., bankrupts. On petition for review of an order of referee assigning assets to various estates, dated August 14, 1909, and an order of the referee relating to the disallowance of claims against partnership assets, filed August 19, 1909. Reversed.

A. B. Darelius, for petitioning creditors.
E. P. Sanborn, for answering creditors.
E. H. Crooker, for trustee in bankruptcy.
Cliff & Purcell, for bankrupts.

WILLARD, District Judge. It is a mistake to say, as do the respondent creditors on page 2 of their brief, that the partnership between M. A. and Geo. H. Culver commenced at Ortonville in 1900, or in 1901. The evidence requires a finding that it commenced at Britton, S. D., in 1885, and that it continued from that date until it was ended by these bankruptcy proceedings in 1909. It has thus continued for more than 20 years without interruption. M. A. Culver testified that they had done business with one of their present creditors for more than 20 years.

It is also a mistake to say, as do the respondent creditors on page 4 of their brief, that the business in which the partnership was engaged was mercantile business only. The evidence requires a finding that from 1885 until these bankruptcy proceedings were commenced the bankrupts were partners in each and every kind of business in which either one of them was engaged, or in which both were engaged together. That what is called by the parties the "outside business" did not commence at Ortonville, also, clearly appears from the evidence. M. A. Culver testified that they had been dealing in gold and silver mining stocks before they went to Mankato, and that the company had dealt in iron lands before they went to Ortonville, and that they bought a farm or two in Dakota before they left Britton.

The evidence is uncontradicted that all these transactions, including the cattle business at Britton, were transactions which were carried on for the benefit of the partnership. The theory that there was a tenancy in common between the two brothers with reference to each particular piece of land that they bought, and that each transaction outside of the mercantile business constituted a separate transaction, independent of all the others, finds no support in the evidence. George Culver testified repeatedly that they were general partners in everything, and that there was no separate agreement as to each tract of land.

The evidence also shows that since 1885 neither one of these bankrupts has ever had any individual property or business. That their partnership agreement extended to every kind of property in which either one was interested is shown by the testimony relating to their

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

homesteads. · When this matter first came up at the examination of M. A. Culver, he testified that the two homesteads were handled in exactly the same way as these mining and other properties; and on cross-examination he said that they belonged to the partnership just the same as all the rest of the property, and that if sold they would divide the profits and losses just the same as all other properties; and, what is most significant, he added that that was what they had done at Britton where they both had homes. This last statement was corroborated by George Culver, who testified that when he sold his home in Britton he put the money derived therefrom into the business at Ortonville.

It is true that thereafter during the examination some attempt was made by leading questions to modify the effect of this declaration, but it is very clear from the evidence that this homestead property was treated in exactly the same way as all the property owned by them; in other words, they were general partners in everything.

In English and American law such a partnership is very rare. This, however, is not true in other systems of jurisprudence. In the Spanish Civil Code such a universal partnership in property is recognized, and the rights and liabilities of partners therein defined.

I hold that the evidence requires a finding that since 1885 there has existed between the bankrupts such a universal partnership as has been heretofore mentioned, and this evidence is to my mind practically uncontradicted. The impression which I formed and announced at the hearing has been confirmed by a careful reading of all the evidence. The question as to the relations between the two bankrupts must be determined largely by the testimony of the partners themselves. There are certain undisputed facts, which, according to the respondent creditors, show that no such universal partnership existed; but these undisputed facts do not create a conflict in the evidence. They simply make it necessary to determine how much the existence of these facts weakens the positive statements of the two partners as to the existence of that relation between them.

In answer to a question upon cross-examination, M. A. Culver testified that his brother was running the merchandise business almost exclusively. Other evidence presented to the same effect was uncontradicted, and it was also proven that M. A. Culver devoted very little attention to the mercantile business, but did transact, almost exclusively, the outside business. These facts constitute a circumstance indicating the existence of this general partnership. That M. A. Culver was a partner in the mercantile business is undisputed. It would be very strange if he could entirely neglect that part of the business and devote himself to these mining and other transactions, and still be entitled to a share of the profits which might result from the mercantile business.

The evidence shows that very soon after going to Ortonville George Culver and M. A. Culver went into the granite business. Part of the stock of the granite company stands in the name of George Culver, part in the name of M. A. Culver, and part in the name of Culver Bros. In view of the evidence in this case, how is it possible to say that all of the granite stock is not partnership property?

Among the circumstances which, according to the respondent cred-
itors, indicate that the only partnership business was that relating to
the merchandise, is the fact that the partnership name was Culver
Bros. This was the name under which they transacted business at
Britton, and the name under which they had transacted business from
that until the present time. The evidence shows that the business
other than the mercantile business which the partnership transacted
was, as a general rule, carried on in the name of M. A. Culver. M. A.
Culver testified that they treated and kept the mercantile business
separate from the outside business, and that that was one reason why
it was transacted in his name. Another reason was, for matters of
convenience, the business being done by M. A. Culver, it was more con-
venient to have the titles in his name. The existence of a partnership
having been proven, and it having been established that this partnership
was engaged in mining and land speculation, the fact that the title to
the property acquired in such speculations was taken not in the partner-
ship name, but in the name of one of the partners, is not conclusive that
it is not partnership property.

The only fund which these brothers have ever had since 1885 was a
partnership fund. All of the property now held by them in the name
of M. A. Culver, or in the name of George H. and M. A. Culver, was
necessarily acquired by the use of partnership funds; and it was
acquired for partnership purchases, because the evidence shows that
when it was sold the profits and losses were to be equally divided. It
was therefore, applying the rule stated on page 9 of respondent credit-
ors' brief, partnership property. The respondent creditors applied this
same rule in the present case, for they claim that the lot upon which the
store building is located is partnership property, although the title
thereto is in the name of Geo. H. and M. A. Culver.

Considerable time was devoted in taking the testimony to the ques-
tion as to whether the proceeds from the sales of outside property were
used in the mercantile business or not. Both partners testified posi-
tively that such proceeds were used; but on cross-examination they
were not able to state the amount nor any of the details of such appli-
cation. While I consider the fact proven, yet I do not consider it at
all material. There was but one partnership, and it was engaged in
all kinds of business. The mercantile business was one branch of
the general business, and whether the funds were kept separate or not
is, in my opinion, immaterial.

Much evidence was also taken with reference to statements which
have been made by the bankrupts to their creditors from time to time.
It is claimed by the respondents that this outside property did not
figure nor their outside liabilities in these statements. One statement,
however, was produced which was given to the Brown County Bank
(Exhibit 8) wherein all these items did appear. These statements,
however, can in no way operate as an estoppel against creditors holding
notes signed by M. A. Culver. The only bearing which they have in
the case is their tendency to show that the statements made by the two
bankrupts as to their partnership were not correct.

It is admitted that, while the partnership kept books of account

showing the condition of its mercantile business, it kept no books whatever relating to its other business. This is also another fact the only tendency of which is to weaken the statement of the partners as to the existence of their partnership.

But when these and all other circumstances of a similar nature are considered and given their due weight, the fact still remains proven, in my opinion, that there was this universal partnership existing since 1885. When the brothers were at Mankato engaged in the hardware business, were they not engaged in partnership business, simply because the hardware business was different from the general mercantile business which they carried on at Ortonville? There being no evidence that the original partnership formed in Britton in 1885 was ever discontinued or suspended, what would be said of the rights of the creditors, if there are any now who became such by reason of the hardware business carried on at Mankato? Would they be partnership creditors entitled now to share in the partnership assets, or would they be independent and separate creditors?

As has been said before, this case is an extremely rare one, but it has to be disposed of with reference to the recognized principles of law. The question is: What shall such disposition be? There are apparently only two courses to pursue, for it cannot for a moment be contended, in view of the evidence, that the property which stands in the name of M. A. Culver is his private property, or that when he bought he was engaged in a private enterprise in which his brother had no interest. It must be held either that there was one general universal partnership and that all of the property in question is partnership property, or it must be held that there was one partnership as to the mercantile business, another partnership as to the granite business, another partnership as to the oil business, and another partnership as to the mining business. It would be also necessary to hold that, in cases of other pieces of real estate bought by M. A. Culver, there was a separate partnership in respect to each piece so bought. No warrant can be found in the evidence for holding that there were only two partnerships, one relating to the mercantile business, and the other relating to the outside business. When the liabilities are apportioned, it would also have to be held that the liabilities which were incurred on account of the mercantile business should be the liabilities of that partnership, and that each of the other partnerships, the granite, the oil, the mining, and the land, should have its respective quotum of liability.

The liabilities would have to be apportioned in that way, no matter how the notes are signed, because, in my opinion, if it is proven that a note signed in the name of one of the partners was in fact given for the partnership business, and the proceeds realized therefrom were used in the partnership business, such note is a partnership liability. Davis v. Turner, 120 Fed. 605, 56 C. C. A. 619, Circuit Court of Appeals, Fourth Circuit. There being here one general partnership, all the liabilities were necessarily incurred for the benefit of that partnership.

The impracticability of dividing up the assets and the liabilities among the several different partnerships of which mention has been made would be a strong argument against pursuing such a course.

But there is a stronger reason, namely, that the evidence does not show any such multiplication of partnerships. There was only one partnership. All of the property belongs to that partnership, and all of the debts are the debts of that partnership.

The result is that the orders here reviewed are reversed, and the case is remanded to the referee, with instructions to make an order declaring that all of the property now owned by either one or both of the bankrupts is partnership property, and that all of the debts, whether evidenced by obligations of the Culver Brothers, or of M. A. Culver, or of Geo. H. Culver or of M. A. & Geo. H. Culver, are partnership liabilities.

It is ordered that all persons interested have 20 days from the filing of this order in which to file a petition for review.