In re W. S. KUHN & CO.

(District Court, W. D. Pennsylvania. May 11, 1917.)

No. 7240.

1. BANKRUPTCY ⬤═309—CLAIMS—PARTNERSHIP AND INDIVIDUAL DEBTS.

Holders of the joint and several obligations of the members of a partnership, signed in their individual names, but executed in connection with a partnership transaction, were entitled to prove them against both the partnership estate and the individual estates.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 555–564.]

2. BANKRUPTCY ⬤═351—CLAIMS—PARTNERSHIP AND INDIVIDUAL DEBTS.

Where members of a partnership in their firm transactions had no distinctive firm name, but operated at times under the name "W. S. K. & Co.," at times under the name "J. S. & W. S. K.," and at other times under the individual names of the two partners, there was nevertheless only one firm, and no particular set of creditors had a right to preference in bankruptcy, because the firm in their particular transaction had assumed a particular firm name or designation.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 563, 564.]

In the Matter of W. S. Kuhn & Co., bankrupts. On review of an order of the referee. Report affirmed.

Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., for trustees.

Parker & Aaron, of New York City, and Wm. F. Knox, J. M. Shields, Jas. S. Schmertz, and Sterrett & Acheson, all of Pittsburgh, Pa., for creditors.

THOMSON, District Judge. The referee in the above-stated case allowed the claims in question here to be proved against the partnership composed of J. S. Kuhn and W. S. Kuhn, and has certified for our opinion the correctness of such allowance. These facts are shown by the testimony and found by the referee:

First. For many years the brothers, James S. Kuhn and W. S. Kuhn, were engaged in business together and had a large number of joint transactions, which appear in a set of books kept under the name of W. S. Kuhn & Co. The business in which they were engaged, both individual and partnership, or as a firm, was the purchase and sale of bonds, stocks, and securities.

Second. All joint transactions of the two were partnership transactions, and were so entered on the partnership books, and although there were a large number of transactions, amounting to several millions of dollars, no obligations were issued in the partnership name of W. S. Kuhn & Co., a few obligations being issued, by one or the other of the partners, in the name of J. S. & W. S. Kuhn.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Third. The obligations proved as claims against the individual es-tates, or against the partnership estates, are signed either "J. S. & W. S. Kuhn," "James S. Kuhn," "W. S. Kuhn," or by one or other of these names alone.

Fourth. All the claims allowed against the partnership, and which are involved in the question certified to the court, consist of obligations signed by James S. Kuhn and W. S. Kuhn together; that is, the names of both individuals appear as contractors and are jointly and severally bound.

Fifth. In all these different claims the several obligations were part-nership transactions, in which the partnership received the benefit of the obligation, and the same were so entered and carried upon the books of the partnership.

It is by reason of the numerous individual and joint transactions, and the various forms of obligations given, that controversies have arisen as to whether certain obligations were in fact individual or part-nership. I shall not take up the several claims in detail, as these have been fully set out and individualized by the learned referee in his elab-orate and able report. I shall consider only the legal question, upon which alone the correctness of the referee's conclusion depends.

The referee had before him three classes of claims, arising from the difference in form of the various obligations presented: First, those signed by J. S. & W. S. Kuhn. These were admitted by all parties to be partnership obligations, and were so allowed. Second, obliga-tions signed either by James S. Kuhn or W. S. Kuhn, and which were entered upon the partnership books, and treated as partnership trans-actions, and of which the firm received the benefit. And, third, claims based upon obligations signed "James S. Kuhn, W. S. Kuhn," together.

As to the second class of obligations, the learned referee held that the several claimants therein had the right to elect as to whether they should treat the obligations as those of the individuals as they appeared on their face, proceeding against the individual estates, or treat the sig-natures of the individuals as those of the partnership acting as the agent of the partnership, and so claim against the assets of the firm; that they could thus proceed against either, but not against both, the individual estates and the assets of the firm.

As to the third class of obligations, which are involved here, the referee reached the conclusion that a claimant holding the joint and several obligations of the parties composing the partnership is entitled to prove his claim against and participate in the distribution of both the estate of the partnership and of the individuals composing it. It is the correctness of this ruling that is challenged by the exceptants. From the authorities cited by the learned referee and by counsel for the sev-eral claimants, these propositions are reasonably clear:

A. In cases arising upon joint and several obligations of the individ-uals composing a partnership, the old English rule required the claim-ant holding such obligations to elect against which estate he would pro-ceed; this on the principle that a joint and several creditor may sue his debtors jointly or severally, but does not have both remedies. This doctrine was extended to the case where a claimant held the obligations

of a partnership indorsed or guaranteed by one or more partners. In re Farnum, Fed. Cas. No. 4,674.

B. This rule, which received much adverse judicial criticism, resulted in an amendment to the Bankruptcy Act in 1861, providing that as to any bills of exchange and other negotiable instruments, where the partnership and the individual members became liable by separate contracts, the claimant had the right to proceed against the funds belonging to the estate respectively liable on those contracts. This was later extended by acts of Parliament to embrace all cases of contract. In 1869 an act was passed providing that in bankruptcy, where the bankrupt was liable under distinct contracts as members of two or more firms, or as a sole contractor and also a member of a firm, proof might be made under such contracts against the properties respectively liable under such contracts.

C. These acts did away with the old English rule, and thereafter the English courts held that the holder of a joint and several obligation of all the parties composing a firm might proceed against the estate of the partnership and the estates of the individuals composing it. Simpson v. Hennig, L. R. 10 Q. B. 406; Ex parte Honey, L. R. 7 Ch. App. 178; In re Wilson, L. R. 8 Ch. App. 914.

D. A different rule from that of the old English rule exists in the United States. From the authorities, it is perfectly clear that, when the creditor has separate and distinct contracts, such as a note signed by one firm and indorsed by another firm, or a note signed by both the partnership and the individual members, or a note signed by the firm and indorsed by a partner, double proof is allowed. In re Farnum. supra; Berkshire Woolen Co. v. Juillard, 75 N. Y. 535, 31 Am. Rep. 488; Davis v. Turner, 120 Fed. 605, 56 C. C. A. 669; In re Stoddard Bros. Lumber Co. (D. C.) 169 Fed. 193; In re Thomas, Fed. Cas. No. 13,886.

[1] The legal proposition that double proof is allowed where there are separate and distinct contracts is conceded by counsel for exceptants. But it is argued that this rule does not apply in the case of joint and several obligations; that in such case the claim cannot be presented against both the joint and separate estates, but that a creditor is driven to his election; and that in these cases, proof having been made and distribution awarded to claimants from the individual estate of J. S. Kuhn, claimants have thus made their election and are estopped from making proof against the joint estate.

It is certainly true that the English cases make no distinction between the joint liability of the individual members of a firm and the firm liability, holding that they are the same under their Bankruptcy Acts; and hence it followed that, where all the members of a firm gave a joint and several obligation, a liability arose thereunder both against the assets of the firm and the separate estates of the individual members. I am not satisfied that a different rule prevails in this country.

[2] It would seem, in the case of the Kuhns, that in reference to their joint transactions, all of which were firm transactions, they had no distinctive firm name. When they operated under the name of "J. S. & W. S. Kuhn," they did so as partners. If they operated under

"W. S. Kuhn & Co.," it was a firm transaction. When they operated under the name "J. S. Kuhn, W. S. Kuhn," it was a firm transaction. Under these circumstances, it can hardly be said that any one of these was the distinctive firm designation. While the partnership was without a distinctive name, the fact nevertheless is that, while acting under different names, they were still but one firm, not a separate firm composed of the two brothers under the name of "W. S. & J. S. Kuhn," and another separate firm under the name "J. S. Kuhn & Co.," and still another acting as "J. S. Kuhn, W. S. Kuhn." All of these were joint or partnership transactions, and no particular set of creditors who had claims against the firm had a right to preference because the firm in their particular transaction had assumed a particular firm name or designation.

I think the doctrine of election between inconsistent remedies on the same claim has no application. When the partners jointly agreed to pay (this being a firm transaction), they bound the firm; and when they severally agreed to pay, they bound themselves as individuals. It is not apparent why this joint or firm obligation, and the several or individual obligation, should differ in principle or legal effect from that where the firm executes the obligation and the individual indorses it. In Re Coe, 169 Fed. 1002 (Dist. Ct. So. Dist. of New York), the bankrupt firm misappropriated funds, which created a joint and several liability against the members of the firm. The court below, whose opinion was affirmed by the Circuit Court of Appeals, held that the creditor was entitled to prove his claim against the firm estate, and also against the estates of each of the firm members. Collier on Bankruptcy (8th Ed.), p. 136, says:

"Since the act of 1861 in England, joint and several creditors have been permitted to prove against and receive dividends from both joint and separate estates. The weight of American authority has always been in favor of this rule. A common instance is a note made by a firm and indorsed by the members of the firm. Though at first glance this rule seems inequitable, the firm and the individuals are separate entities, and had made separate contracts, and may therefore be held to the performance of them. Where a creditor holds notes or other obligations, binding both upon the partnership and also upon an individual member thereof, he may prove against both estates and receive dividends from both."

Loveland on Bankruptcy, § 275, says:

"A firm and individual creditor—that is, a creditor for whose debt the firm is jointly and one or more of the partners is also liable—may prove and receive dividends from both the firm estate and the individual estate, or either of them."

The principle upon which double proof is allowed is that the firm estate and the individual estate are considered, in the administration of property in bankruptcy, distinct estates. On the general subject, the authorities are reviewed and very intelligently discussed by Judge Sprague in the Farnum Case above cited. Daniel on Negotiable Instruments, § 94, says:

"A joint and several note, though on one piece of paper, comprises in reality and in legal effect several notes. Thus, if A., B., and C. make a joint and several note, there is a several note of each and the joint note of all—in all four notes."

The argument against the position of the claimants seems to be based on the proposition that a creditor, having a joint and several claim, is prevented at law from proceeding against the parties both jointly and severally. In other words, he is not entitled to enter both a separate judgment against each debtor and a joint judgment against all. That is to say, he is prevented from cumulating judgments on the same demand. But he may enter a judgment against each of the joint and several debtors, and on the execution under such judgment he can reach both the individual and joint assets, so far as may be necessary to satisfy his claim in full. Thus, if his claim is joint and several against A., B., and C., he may on the several judgment against A. reach the individual property of A. and A.'s interest in the joint property, and so against each. And thus, under the three several judgments, he has recourse against all the individual and joint property. Or he may choose to obtain a joint judgment against A., B., and C., and as each of the joint debtors is liable at law in solido, he may under his judgment have recourse against the individual estates of each of the debtors, and the joint estate of the three debtors, and in this manner has recourse to all the joint property and all the several property.

The argument would appear to involve a confusion of procedure, with recovery of assets. The bankruptcy court having taken charge of the assets, joint and several, he cannot sue in law, and is remitted to the bankruptcy court for relief, and in this proceeding the claimants are asking for the same recourse which they would have had in law, if the bankruptcy court had not constituted itself the administrator of the estates.

After a careful consideration of the very elaborate and able argument of counsel for the exceptants, I am of opinion that the conclusions reached by the learned referee were in harmony with the law. His report is therefore affirmed.