GAINESVILLE AND ALACHUA HOSPITAL ASSOCIATION v.
GEORGIA HOBBS and the ATLANTIC COAST
LINE RAILROAD COMPANY.

(Filed 12 October, 1910.)

1. **Statute of Frauds—Debt of Another—Direct Obligations.**

   The statute of frauds requiring that a promise to pay the debts of another be in writing, etc., "does not apply to original promises or undertakings, though the benefit accrues to another than the promissor."

2. **Same—Promise Relied On—Evidence—Questions for Jury.**

   Upon demurrer to the evidence, the evidence must be considered in the view most favorable to the plaintiff, and the weight of the

evidence, the credibility of the witnesses and reasonable deductions therefrom must be left to the decision of the jury, in an action brought by a hospital association against a railroad company for services rendered an employee of the latter, in good standing in its relief department, when it tends to show that the employee was sick, adjudged by the medical attendants of the railroad to require attention at one of the defendant's hospitals, which it had contracted with the employee to furnish free at one of the hospitals under its control; that the medical and other officials of the defendant attended to and arranged for the employee to be transported and cared for at plaintiff's hospital, one carried on independently of the railroad, where the services were rendered for which the action was brought; and the fact that the employee was joined in the action as a party defendant, does not preclude the plaintiff, as a matter of law, in this action against the railroad, the question as to whether the plaintiff relied upon the implied promise of the railroad and that credit was extended thereon, being, under the circumstances, a question for the jury.

3. **Damages — Services Rendered—Verified Statement—Evidence—Questions for Jury.**

The filing of an itemized statement duly verified, in an action against a railroad for services rendered an employee in its relief department, Revisal, sec. 1625, is not proof as to the damages recoverable, the action not being instituted upon an account for goods sold and delivered; but as, in this case, there was sufficient evidence of the services rendered, the length thereof, etc., a motion for judgment as of nonsuit upon the evidence should be denied.

APPEAL from *Whedbee, J.,* at the August Term, 1910, of SAMPSON.

At the close of the evidence the defendant railroad company moved for judgment as of nonsuit. Motion allowed. Plaintiff excepted and appealed. Miss Hobbs, the defendant, offered as a witness by the plaintiff, testified as follows: "I live in Clinton. I was working at Hawthorne, Florida. Dr. Bowman, medical examiner for defendant railroad, relief department, examined me and I passed, and this certificate and book showing the rules of the relief department, was handed to me in the regular course of the railroad mail. I was agent and operator. My dues to relief department were $1.50 per month and I paid them up to the time I was taken sick with typhoid fever about the last of

May, 1907. I was taken to plaintiff's hospital on 2 June, 1907. I got Miss Dixon to wire Superintendent H. O. McArthur, and she received the telegram marked Exhibit E."

EXHIBIT E.

Form A 97. Office Stamp.

Atlantic Coast Line Railroad Company.

Gainesville, Fla.

To Miss F. M. Dickson, Hawthorne, Fla.

Subject your wire date 1. This message properly stamped and countersigned by agent at Hawthorne. Will pass yourself and Miss Hobbs Hawthorne to Gainesville and regular transportation will be handed conductor on arrival at this point.

H. O. M.

F. M. Dickson.

Reference No.: G. E. Hobbs.

On back of this telegram is stamped "A. C. L. R. R. Co., 2 June, 1907, Hawthorne, Fla." This wire was in reply to wire from Miss Dixon to Superintendent H. O. McArthur, marked Exhibit F.:

EXHIBIT F.

Form A 97. Office Stamp.

Atlantic Coast Line Railroad Company.

To H. O. M., Gv.                       Ha., 1st.

Subject—Letter from Dr. Hodges and he thinks Miss Hobbs best be taken to hospital tomorrow. Please arrange to have her taken in baggage car on cot. Dr. Hodges wrote for me to accompany her to Gv. Have reliable boy in office who could manage things until I return. Please advise. Reference No.

F. M. D.

On 29 May, about two days before telegram, Exhibit F, was sent, Miss Dixon wired Superintendent McArthur as follows:

EXHIBIT G.

Form A 97.   Office Stamp.
        Atlantic Coast Line Railroad Company.
                                        Hawthorne, 29.
To H. O. M., Gv.

Subject—Miss Hobbs is a great deal worse and I do not know what to do, as there is no doctor here now, or nearer than Gainesville. She is a member of relief department. Is it the company's place to send a doctor. Please advise quick.
                                        F. M. DICKSON.
Reference No.: O. K.                    Wu. F. D.
On 30 May Superintendent McArthur wired:

EXHIBIT 1.

Form A 97.   Office Stamp.
        Atlantic Coast Line Railroad Co.
                                        Gainesville, 30.
To Miss Dixon, Ha.
    Subject—Doctor on 89.                H. O. M.

"Exhibit E was our pass to go to Gainesville. After Miss Dixon wired to know about a doctor and received the reply that the doctor was on 89, I looked for a doctor. He did not come on 89, but Dr. Hodges came next day on 78. This was Sunday. I did not know what doctor was to come to see me. Dr. Hodges came and examined me. He said it was best for me to get to a hospital. He said he would go back and make arrangements with Mr. McArthur to have me taken to a hospital. He was a local surgeon for the A. C. L. R. R. Co. Dr. Bowman, the medical examiner, who examined me for entrance into the relief department, came to see me Wednesday after Dr. Hodges came Sunday, and offered his services and I told him Dr. Hodges was treating me and making arrangements to carry me to a hospital, and he said all right, and did not treat me. Dr. Hodges came on train No. 78 on Sunday and Dr. Bowman came on 89 on Wednesday afterwards. I was carried from Hawthorne on the telegram as a pass. At Rochelle, about nine miles from Hawthorne, Mr.

T. A. Marshburn, an employee of the A. C. L. R. R. Co., met us with a pass to Gainesville, and we went on there on the pass. I was on a cot and Miss Dixon was with me and we were in the baggage car. I was not delirious, knew what was going on. The hospital at Waycross was a railroad hospital. I did not know whether the hospital at Gainesville was a railroad hospital or not. Dr. Hodges met us at the depot in Gainesville with ambulance and took me right up to the hospital. My room and bed were ready, and I was carried right on up and stayed there until 29 July, 1907, when I was released as cured. I had paid up my dues from the time I became a member of the relief department in April, 1907, until I was taken sick the latter part of May, 1907, at the rate of $1.50 per month and the relief department paid me after I was taken sick one dollar per day for 365 days as sick benefits. I do not know how far Waycross is from Hawthorne. Dr. Bowman had nothing to do with taking me to the hospital. I don't know whether Dr. Hodges is president of the hospital at Gainesville or not. I did not know what doctor was to call to see me. Dr. Hodges came once and examined me. I made no arrangements about being taken to a hospital and did not know where they were going to carry me. Dr. Hodges and Miss Dixon and T. A. Marshburn took me off the train and carried me to the hospital. I thought I was being taken to a railroad hospital."

The plaintiffs also offered their account made out to Miss Georgia Hobbs for $127.75, for eight weeks' attention; $120—$2.00 laundry, and $5.75 medicines, etc. It also offered certificate of membership of Miss Hobbs in the relief fund of the relief department of the Atlantic Coast Line Railroad Company and the book of regulations governing said relief department. Among these regulations are the following:

"12. The medical examiners shall make the required physical examination of applicants for membership in the relief fund, prepare applications, report the condition of sick or injured members, decide when members are disabled, prepare claim for benefits, certify bills for surgical treatment, perform such other duties as may be required of them by the chief surgeon, and conform to such rules as he may establish."

"47. Payment for each day, except for the first six days, of disability classed as due to sickness, for a period not longer than fifty-two (52) weeks, at the same rates as for accident benefits; and provision by the department for free medical treatment of the member, in one of the hospitals under its control, in cases of disability, classed as due to sickness which, in the opinion of the medical examiners of the department, may require such treatment, and when approved by the superintendent or chief surgeon."

*Faison & Wright* for plaintiff.
*Davis & Davis* and *F. R. Cooper* for A. C. L. R. R. Co.

MANNING, J. The sole question presented by this appeal is whether the evidence, considered in the view most favorable to the plaintiff, is sufficient to be submitted to the jury to charge the defendant railroad company as an original promisor, upon an implied promise to pay the plaintiff the reasonable charges for the board and attention to Miss Hobbs. If not sufficient for this purpose, then the judgment of nonsuit should be sustained; and if sufficient, it should be reversed. It is too well settled to require the citation of sustaining authorities, that the statute of frauds "does not apply to the original promises or undertakings, though the benefit accrues to another than the promisor." We think the evidence, considered in the view most favorable to the plaintiff, as we must consider it under the uniform rulings of this Court, sufficient to charge the defendant railroad company. The weight of the evidence, the credibility of the witnesses and the reasonable deductions therefrom, must be left to the decision of a jury. The regulations, which we have quoted in the statement of the case, entitled Miss Hobbs—a member in good standing of the relief fund—to free medical treatment in one of the hospitals under the control of the defendant. The evidence offered clearly tends to prove that the resident medical director and the surgeon of the company, sent especially to take charge of her case, were endeavoring, by direction of defendant's superintendent, to carry out this express stipulation of the contract. The removal of Miss Hobbs from Hawthorne, Fla., to Gaines-

153—13

ville, Fla., and to plaintiff's hospital, was done by the orders of the superintendent and the medical director.   We do not see that the conclusion of this Court in *Barden v. R. R.,* 152 N. C., 318, in which we held a certain stipulation in the contract of membership to be void as in contravention of public policy, conflicts with our conclusion in the present case, that the evidence should have been submitted to and passed upon by a jury.   If the defendant's relief department, under that decision, is treated as an "association supported by the mutual contributions of employee and employer, maintained for the sole purpose of relieving and mitigating the suffering of its members—a charity whose noble purposes are untainted by selfish interest," we cannot see how this conclusion absolves the defendant from the performance of its promise that its sick members shall be entitled to receive the benefit guaranteed by the contract to them.   One of these benefits is free medical treatment in one of the hospitals under defendant's control; "free medical treatment" means, of course, without cost to the disabled member.   The place of treatment— one of the hospitals under its control—as between the member and the defendant, must mean the hospital to which the sick member is taken by the medical examiner of the defendant, as the member cannot be presumed to know what hospitals are under the control of the defendant.

It was stressed in the argument before us that the account offered by the plaintiff in evidence was made out to Miss Hobbs, and she was sued jointly with the defendant railroad company; and these facts conclusively proved that the plaintiff did not rely upon the implied promise of the defendant company and the credit was not extended solely upon that promise.   These are evidential facts to be considered by the jury, but we do not think conclusive, in view of the other facts in evidence.   2 Page on Contracts, secs. 619, 632.   It would be competent for the jury to give to them controlling weight, but we do not think that the law attaches to them such artificial weight as to make them conclusive.   It was, also, suggested that the plaintiff could not sue into the contract between Miss Hobbs and the defendant railroad company, evidenced by her benefit certificate and the rules of the department.   This is not the question presented, but the

proper and sole question is, can a jury reasonably infer from the entire evidence an original promise to pay the plaintiff for its care of Miss Hobbs? Is the liability of the defendant primary? If so, then there can be no question that the service performed—the detriment or loss to the plaintiff—is a sufficient consideration to support the contract. 2 Page on Contracts, sec. 618. We, however, do not think it was competent to prove the account, by an itemized statement duly verified as prescribed in sec. 1625, Revisal, as the action is not instituted "upon an account for goods sold and delivered." There, however, was evidence offered of the services rendered and the length of time from which the jury could have found an amount fixed by them as the reasonable value of such services. The judgment of nonsuit is set aside and a new trial ordered.

New trial.