## CITY OF CHARLOTTE v. JOHN B. ALEXANDER.

### (Filed 16 May, 1917.)

**1. Municipal Corporations—Minutes—Contracts—Statutes—Parol Evidence.**

A contract made by a municipality and the abutting owners on its street, respecting an improvement of the street, does not require, for its validity, that it be entered in the minutes of the meeting of the duly constituted authorities, acting in behalf of the municipality, in the absence of statutory provision requiring it, and may be shown by parol evidence.

**2. Statute of Frauds—Municipal Corporations—Street Improvements—Promise—Direct Obligation—Consideration.**

Where a statute prohibits a municipality from assessing the lands of adjoining owners upon a street exceeding 20 per cent of their value for its improvement, and the requisite number of such owners appear before the proper authorities at their regular meeting and propose that the street be improved at a cost beyond the limit imposed, the same to be assessed against their lands, the spokesman promising to obtain a written waiver of their statutory right from the other owners and deliver them to the city, and in consequence the proposition is accepted and the improvement made: *Held,* the promise made by the spokesman created a direct obligation upon himself, founded upon the benefits to be received by him, and is not a promise to answer for the debt or default of another, falling within the meaning of the statute of frauds requiring a writing, etc.

**3. Same—Benefits—Estoppel.**

Abutting property owners who have contracted with a municipality that the latter exceed its statutory authority in assessing their lands beyond a certain per cent of their value for street improvements, and to give it a written waiver of such right, are estopped to deny the validity of the contract by accepting its benefits, and the "waivers," when obtained, are enforcible by the municipality.

CIVIL ACTION, tried at November Term, 1916, of MECKLENBURG, before *Justice, J.* At the conclusion of plaintiff's evidence the court sustained motion to nonsuit. Plaintiff excepted and appealed.

*M. L. Ritch, C. D. Taliaferro, J. W. Keerans for plaintiff.*
*Cansler & Cansler for defendant.*

BROWN, J. The plaintiff sues to compel defendant to deliver to it certain so-called waivers for street improvements in possession of defendant and to recover $7,504.83 for street paving assessments on account of the loss sustained by it, caused by the failure of the defendant, in violation of his promise, to procure and deliver to it agreements from all owners having property abutting on certain streets improved by the plaintiff, waiving the 20 per cent clause in the city charter and con-

senting to pay the actual cost incurred by the city in improving said streets; the judgment to be discharged upon the defendant procuring said agreements, without conditions or restrictions, duly executed, and delivery over to the plaintiff, or the payment of said assessments by the property owners.

It appears in the pleadings and evidence that the city of Charlotte had authority, upon petitions of citizens owning more than one-half of the frontage abutting on certain streets (including those in controversy) to adopt a system of laying out streets, etc., for permanent improvement, and equalize the assessments on the real estate to pay the cost thereof, as might be just and proper, provided that such assessments should not exceed the amount of special benefits to or enhancement in value of said property by reason of said improvements, or 20 per cent of the assessed taxable value thereof.

That certain citizens, including the defendant, owning the requisite frontage abutting on the four streets in controversy, presented petitions to the board of aldermen in March, 1912, asking that said streets be improved; that the defendant was especially interested therein, owning property abutting on three of same. That in April, 1912, the board passed an ordinance declaring said streets permanent improvement districts; that nothing whatever was done by the plaintiff towards improving said streets until after 27 March, 1913; that on this date the defendant and other citizens owning property abutting on said streets appeared before the board of aldermen, the defendant acting as spokesman, for the purpose of inducing the board to pave said streets.

The plaintiff offered evidence and proposed to prove that "at a meeting of the board of aldermen on 27 March, 1913, the defendant and other citizens interested in said streets appeared at a regular meeting of said board and were informed by the latter that on account of the cost to improve said streets exceeding 20 per cent of the assessed taxable value thereof, as provided by the city charter (ch. 251, Private Laws 1911, sec. 7) the streets could not be improved by the city unless agreements were obtained from all property owners abutting on said streets waiving the 20 per cent clause and agreeing to pay the actual cost for the work; that upon such statement the defendant, as spokesman for the petitioners, then and there at said meeting promised and agreed that if the said streets were ordered to be paved and the work done by the city he, personally, would guarantee to secure such agreements or waivers from all the property owners and deliver over to the city; that the plaintiff acted and relied upon said promise and at said meeting passed a resolution or ordinance directing said streets to be paved, and they were so paved; that subsequently notice was given and assessments were made charging property owners with the actual cost of the work;

that the contract was let and bonds issued; that defendant was especially interested in having said streets improved; that he was the owner of property abutting on three of said streets; that but for his promise and guaranty said streets would not have been improved."

This evidence was excluded by the court, and plaintiff excepted.

It appears that a waiver is a paper-writing duly executed by the property owner whereby he waives the limitation of 20 per cent in the city charter and approves and confirms the full assessment, being the cost of the improvement, and covenants and agrees to pay the same.

It is admitted that the offer of defendant and the substance of what transpired between the aldermen and defendant was not taken down and entered on the minutes of the board. Plaintiff proposed to prove the transaction by the city clerk and others present at the meeting. So far as the record in this case discloses there is nothing in the city charter requiring all such matters or transactions to be entered of record and making the minutes the only evidence.

We are of opinion that the court erred in excluding the evidence. It may turn out when the evidence is taken that the whole thing was mere declamation and did not amount to a contract, but we must consider it as it is presented in the offer to prove.

1. It is competent to prove such a contract by parol evidence. Neither plaintiff nor defendant will be prejudiced by failure of the clerk to enter it upon the minutes of the corporation.

In 2 Dillon Mun. Corp. (5 Ed.), sec. 557, it is said: "Parol evidence to show facts omitted to be stated upon the record is receivable unless the law expressly and imperatively requires all matters to appear of record and makes the record the only evidence. Thus, in a well considered case in the Supreme Court of the United States it was held that the acts of a corporation might be proved otherwise than by its records or some written document, even although it was its duty to keep a fair and regular record of its proceedings."

In *Bank of U. S. v. Dandridge,* 12 Wheat. (U. S.), 64, *Judge Story* says: "Would the omission of the corporation to record its own doings have prejudiced the rights of the party relying upon the good faith of an actual vote of the corporation? If such omission would not be fatal to the plaintiff in suits against the corporation (as in our opinion it would not be), it establishes the fact that acts of the corporation, not recorded, may be established by parol proofs, and, of course, by presumptive proofs; in reason and justice, there does not seem any solid ground why a corporation may not, in case of the omission of its officers to preserve a written record, give such proofs to support its rights as would be admissible in suits against it to support adverse rights. The true question in such case would seem to be, not which party was plaintiff or defendant, but whether the evidence was the best the nature

of the case admitted of, and left nothing behind in the possession or control of the party higher than secondary evidence. We do not admit, as a general proposition, that the acts of a corporation are invalid merely from an omission to have them reduced to writting, unless the statute creating it makes such writing indispensable as evidence or gives to them an obligatory force."

The same rule is recognized in *U. S. v. Filleborn,* 7 Pet. (U. S.), 28.

In 8 Enc. Ev., 833, it is said: "Where it is sought to prove a contract existing between a municipal corporation and a private person, the fact that the municipal authorities have failed to keep proper record does not prevent proof of such contract by any competent evidence, notwithstanding the fact that the law requires them to keep a complete record of their official proceedings in a proper book."

The authorities seem to be in full accord to the effect that in the absence of a statutory requirement that a record must be made of a contract in order to render the same valid and binding, where a contract or agreement within their jurisdiction has been entered into by a municipal board and has been executed, the same may be established by parol testimony, although there may be no record in the minutes of the board.

2. The contract of defendant need not be in writing, as it is an original promise and does not come within the statute of frauds requiring a promise to pay the debt of another to be in writing. The statute does not apply to original promises or undertakings, though the benefit accrues to another than the promisor. *Hospital v. Hobbs,* 153 N. C., 188.

In *Peele v. Powell,* 156 N. C., 557-8, the Court said: "The obligation is original if made at the time or before the debt is created, and the credit is given solely to the promisor, when the promise is for the benefit of the promisor and he has a personal immediate and pecuniary benefit in the transactions, etc."

This rule is recognized and approved in *Gainesville Hosp. Assn. v. R. R.,* 157 N. C., 461-2; *Whitehurst v. Padget,* 157 N. C., 424-7; *Craig v. Stewart,* 163 N. C., 536; *Handle Co. v. Plumbing Co.,* 171 N. C., 503.

The defendant in making such promise and guaranty was acting for himself as much as any one else. His promise was an original obligation for value received by him from the city, to wit, the performing of the work on the streets in which he was vitally and personally interested. Therefore, he is liable upon his promise to the city, even though there was no writing.

The streets would not have been paved but for the promise and guarantee of defendant to secure waivers and deliver them to plaintiff,

upon which promise plaintiff relied. Although plaintiff had the authority to pave the streets, it could not be compelled to do so, as the 20 per cent clause is the limit of assessments fixed by the charter, beyond which the plaintiff could not go except by the consent of the property owners. *Charlotte v. Brown,* 165 N. C., 435.

3. The waivers (copies of which are set out in the record) are not *nudum pactum,* but are valid and enforcible by the plaintiff when duly executed and delivered.

There is no valid reason why citizens who wish to have their property improved by street paving may not expressly waive the charter restriction and contract with the city to pay the actual cost. There is nothing against public policy in such agreement. On the contrary, it conduces to the general improvement of the municipality. When such contracts are entered into with full knowledge by the property owner the law will not permit him to repudiate it after the work is done and he has received the benefits. This principle is approved by numerous authorities.

The Supreme Court of Arkansas says, 171 S. W., 108: "Where a property owner who was interested in the construction of a proposed improvement, the cost of which exceeds the statutory limit, executed an agreement obligating herself to pay the assessments, which would be uncollectible because in excess of the statutory limit, in consideration of a bonding company buying the bonds for the improvement, she is estopped thereafter to set up the invalidity of the assessments or of the improvement districts levying them." See, also, *Richcreek v. Moorman,* 42 N. E., 943 (Indiana); *Dunkirk v. Zehner,* 74 N. E. (Indiana).

In *McKnight v. Pittsburg,* 91 Pa. State, 273-6, the Court said: "The appellant made no objection to the grade or to the work as it progressed. The work was undertaken at her instance, among others, and for the benefit of her property, and her agents aided the contractor in hauling and furnishing material. *Held,* that she was estopped from controverting the acts of the city and its contractor, even though the contract under which the grading was done was void for want of power of a city to execute it."

"When abutting property owners signed a petition for an improvement, agreeing to pay such assessment irrespective of the number of owners of property signing the petition, they are estopped from setting up the constitutional limitation of special benefits." *Thornton v. Cincinnati,* 260 Ohio Cir. Ct., 33; *City of Belfast v. Water Co.,* 98 Atl., 738, is a recent case containing a well considered opinion of the Supreme Court of Maine, where the authorities are collected and reviewed.

HANNON v. POWER CO.

In our opinion, it is both good morals and sound law to hold that when a person has accepted the benefits of a contract, not *contra bonos mores,* he is estopped to question the validity of it.

The judgment of nonsuit is set aside.

Reversed.

HOKE, J., concurs in result.