Ruffin, C. J.
 

 If this were a contract, within the Act for the prevention of frauds,
 
 Rev. Stat. ch.
 
 50,
 
 sec.
 
 10, it would not be requisite that the written contract should set forth the particular consideration, but it is sufficient to aver and establish it, by proof
 
 aliunde. Miller
 
 v.
 
 Irvine,
 
 1 Dev. & Bat. 103. But this is not a case within the Act Although, in one sense, it is a promise to an. swer the debt of another, yet it is not simply and merely that, but is, in another sense, the debt of the defendant himself, arising upon a new and original consideration of loss to the plaintiff, and benefit to the defendant, by means of the contract between these parties. To such promises the Act does not apply; and the defendant’s oial engagement would have bound him.
 
 Cooper
 
 v.
 
 Chambers,
 
 4 Dev. 261,
 
 Adcock
 
 v.
 
 Fleming,
 
 2 Dev. & Bat. 223,
 
 *117
 

 DeWolfe
 
 v.
 
 Rabaud,
 
 1 Peters’ R. 476, 3 Kent’s Com. 122, 5th Edit.
 

 The meaning of the guaranty cannot be doubted for a moment. It is said, that
 
 “
 
 not
 
 be
 
 so,” restricts the guaranty to the solvency of the debtors at the time of the contract. But an agreement
 
 to malte
 
 a debt
 
 good, should
 
 it not
 
 be
 
 so,” taken even literally, is not merely an engagement that it
 
 is
 
 good at the moment of speaking. The party is to answer,
 
 “should
 
 the debt not
 
 be good”
 
 When ? Why, certainly, when payment shall be required in a reasonable time. The intention was, that if the money could not be collected from the debtor by due diligence, then the defendant should make the note good, that is, by paying the money himself.
 

 Upon the other point, the Court may, perhaps, be unable to administer strict justice between the parties) by reason of the omission of the plaintiff to set forth, in his exception, the period, at which Underwood’s note came to maturity; so that it might be seen, whether the plaintiff has discharged the defendant by his laches. Upon the supposition that he had, we do not, indeed, see any error in the opinion given by the Court, that, if the evidence were believed, he had waived the laches, and bound himself by his interference with the proceedings against Underwood, and his voluntary promise to pay the debt, without any further proceedings of the plaintiff. The defendant knew all the facts, when the note fell due, and was transferred, when the suit was brought, and the insolvency, at that time, of Underwood. It is a settled rule in respect to the undertaking of an endorser, that his promise, with a knowledge of the facts, binds him, though, but for the promise, he would be discharged by the laches of the holder. It is not seen that there can be a distinction in that respect between a liability upon an endorsement of a note and upon a guaranty of it by a separate instrument. In
 
 Smith
 
 v.
 
 Morgan,
 
 3 Dev. 511, it seems to have been taken for granted, that a subsequent promise
 
 *118
 
 to pay the debt would excuse previous laches. And the Supreme Court of Massachusetts has directly decided the point, that, notwithstanding gross negligence of the holder, the guaranty will be continued or revived by a new promise made with a full knowledge of the facts.
 
 Sigourney
 
 v.
 
 Wetherell,
 
 6 Metcalf R. 553. The plaintiff was obliged to use the name of the defendant in suing Underwood, and it must be understood as a part of the contract, that he was at liberty to do so. By his orders to the sheriff then, not to serve the writ, the defendant, in truth, interfered with the rights of the plaintiff by a violation of his agreement, and laid a just ground for an unconditional promise from him, to pay the money.
 

 But. for the reason before mentioned, if there were an error in the last point, the judgment could not be reversed for it; because, as the facts are stated, no laches can be inferred, and the real error in the case was in advising the jury, upon these facts, that there had been laches. The contract of guaranty is not like that of endorsement, in the strictness of the conditions to be observed, or in the consequences of their non-observance. Exact punctuality, in presenting the note for payment, and giving notice of its dishonor to an endorser, is indispensable to charge him, and he is not obliged to show, that he has incurred any loss by the want of it. But a guarantor is not discharged simply by negligence of the other party, but he must also show a loss by it: if a partial loss, then he is exonerated pro
 
 tanto :
 
 if it has produced no loss to him, he remains liable for the whole debt. Stohy on prom, notes, S.'-4G0. Here the defendant says he sustained a loss by the neglect to sue Underwood before his insolvency in April 1841. But he does not shew, that the plaintiff could not have sued, so as to have put his execu.'ion on the debtor’s property, before the sale of it; for the Court cannot assume that the note was due before February, 1841, or that the plaintiff’ had increased the defendant’s risk by granting indulgence to the debtor, or that the
 
 *119
 
 plaintiff could have done better to secure the defendant from loss, than by the suit, which the defendant stopped by his directions to the sheriff, and his engagement to pay the money, without any further pursuit of Underwood.
 

 The whole foundation of the defence, therefore, failed.-
 

 Pek. Cukiam. Judgment affirmed.