Nash, C. J.
 

 This action is upon a guaranty, and two questions arose upon the trial below. We will consider them in the order in which the case presents them. The first is, upon the introduction of parol evidence to prove the consideration, upon which the guaranty arose. It was insisted on behalf of the defendant, that the case upon which the .action is founded, was within the act 1826, and that the consideration ought to appear upon the face of the instrument. This objection-is answered by the .cases of Miller
 
 v.
 
 Irwin, 1st Dev. and Bat. 103. Cooper v. Chambers, 4 Dev. 281. Adcock v. Fleming, 2 Dev. & Bat. 223. Ashford v. Robinson, 8 Ired. 116. 3 Kent’s Com. 122. These authorities show that a guaranty is not within the Statute. They also show that where the contract is in parol, evidence may be resorted to, to establish the consideration. The second objection is, that the Court erred in refusing the instructions required. The plaintiff is a man of color; the case states, “that he “was neither black nor white, but that he was of a brown “ color, between that of an African and a mulatto, and that “neither of his parents .could have been a white person.” The plaintiff then proved, that, in Onslow, where the con“tract was made, he was reputed to be.a free person, was “ called and known .-as free Alfred Nichols.” The defendant requested the Court to instruct the jury, that, in the
 
 *34
 
 case o'f,persons of a
 
 shade
 
 of color darker than that of a mulatto, the law presumed they were slaves. The Court
 
 could
 
 not give such instructions. We know of no law or decision,' which authorises such( presumption. In 1802, in the case Gobu v. Gobu, Taylor Rep. 16, the Court for the first time recognised, as a presumption of law, that a man’s right to freedom depended upon his color. It was decided, that, if he was black, he was by law presumed to be a slave. This case was followed by that of Scott v. Williams, 1 Dev. 376, and it has gradually grown up into a principle, which cannot now be controverted. But both these cases confine the presumption to a black color. In the latter case, Judge DANIEL, before whom the case was tried below, in instructing the jury as to the right to freedom of Jane Scott, the mother of defendant, stated to them, if she was of a
 
 Mach African complexion, they
 
 might presume from that fact that she was a slave; if she was of ai
 
 yellow complexion, no presumption
 
 of slavery arose. Judge Hall, in delivering the opinion of this Court, recognised the distinction made below, between a black and yellow complexion. How it was thought possible, that the Judge could give the instructions required we cannot we H see. It would have been in direct conflict with the only cases on the subject, contained in our reports. Here the plaintiff is described, as being neither black nor white, but of a brown color, between that of an African and a mulatto. The Court was asked to tell the jury, as a matter of law, that if the plaintiff was a shade darker than a mulatto, he was to be presumed to be a slave. If we had the power, we certainly have not the disposition to extend the principle further, than as recognised in the cases cited. Let the presumption rest upon the African color; that is a decided mark: but to carry it into shades, would lead us into darkness, doubt and uncertainty, for they are as various as the admixture of blood between the races,
 
 *35
 
 and against the rule that presumptions are always in favor of liberty.
 

 Judgment affirmed.