### GARRETT-WILLIAMS CO. v. HAMILL.

(Filed September 23, 1902.)

FRAUDS, STATUTE OF—*Contracts—Parol—Promise to Answer for Debt of Another.*

A verbal agreement to be liable for the debt of another is void under the statute of frauds.

ACTION by Garrett-Williams Company against F. A. Hamill and others, heard by Judge *Francis D. Winston* and a jury, at November Term, 1901, of the Superior Court of HALIFAX County. From a judgment for the plaintiff, the defendant Ada Hamill, as administratrix of the estate of T. L. Hamill, deceased, appealed.

*E. L. Travis,* for the plaintiff.
*Day & Bell* for the defendant.

MONTGOMERY, J. The plaintiff brought this action to recover of the defendant an amount alleged to be due for

liquors sold and delivered to the defendants F. A. Hamill and T. L. Hamill, the intestate of the defendant Ada Hamill. The defendant administratrix, in her answer, admits that her intestate did, by parol, agree to pay to the plaintiff a bill of $233.83, for liquors to be delivered to the other defendant, F. A. Hamill, but that the same has been paid, and that if any promise was ever made by her intestate to pay any part of the amount now claimed to be due, it was by parol and for the sole benefit of F. A. Hamill, and pleads the statute of frauds. The liquors were shipped to F. A. Hamill, at Whitakers, and the liquor license was in his name. The plaintiff introduced as its witness A. D. Pender, who said: "I sold goods; I am plaintiff's agent; I sold goods on T. L. Hamill's credit; he said he would see it paid." The witness further testified: "T. L. Hamill was in business in Enfield, and was solvent. F. A. Hamill was not solvent. T. L. Hamill told me F. A. Hamill was carrying on business in Whitakers. We went to Whitakers, and T. L. Hamill bought goods and said, ship goods in future to F. A. Hamill whenever he needed them until he notified us not to ship, and he would see us paid, and to collect from F. A. Hamill when I came around, and if F. A. Hamill failed to pay, he would. I had no written contract with T. L. Hamill. He asked as to the payments, and never notified us to stop shipping goods to F. A. Hamill. He never countermanded orders or notified us to stop shipping. T. L. Hamill was to pay for the goods, and we sold them on his order, on his credit. F. A. Hamill paid me certain amounts, and I gave him credit for them, all under the verbal order of T. L. Hamill. I saw some of the goods in Hamill's store. T. L. Hamill never instructed me to ship or sell any specific goods to F. A. Hamill after the first order. I don't know when T. L. Hamill died. I was in Enfield a day or two before he died. I did not instruct the house to make out account against T. L. Hamill and F. A.

Hamill; the goods were all shipped to F. A. Hamill, but T. L. Hamill was responsible for them. The account was entered on the books, 'F. A. Hamill, T. L. Hamill responsible.' I don't know how they were entered, and never saw the book." The other evidence in the case threw no light on the contract, and was of no benefit to the plaintiff.

The defendant asked the Court to instruct the jury that there was no evidence to go to the jury as to the liability of the defendant A. R. Hamill, administratrix of T. L. Hamill, and the request was refused. We think it ought to have been given. If there was any conflict in the testimony of Pender, it was only an apparent conflict, not a real one. It is true the witness said: "T. L. Hamill was to pay for the goods, and we sold them on his orders, on his credit." But that was explained by his saying, "I sold the goods to T. L. Hamill's credit; *he said he would see it paid.* We went to Whitaker's, and T. L. Hamill bought goods and said, 'Ship goods in the future to F. A. Hamill whenever he needed them until he notified us to stop, *and he would see us paid,*' and to collect from F. A. Hamill when I came around, and if F. A. Hamill failed to pay, he would." "I had no written contract with T. L. Hamill."

New Trial.