D. J. SATTERFIELD v. W. R. KINDLEY et al.

(Filed 30 April, 1907).

1. **Contract—Parties—Nonsuit—Practice.**—When it does not appear that one of two defendants was a party to or authorized an agreement, the subject of the suit, made in his name, and a motion as of nonsuit was not made by him upon the evidence as authorized by the statute, an instruction that in no view of the evidence can the plaintiff recover was erroneously refused and a new trial will be granted as to him, on appeal.

2. **Deeds—Consideration—Parol Contracts —Debt. of Another—Statute of Frauds.**—The recitation in a deed of the amount and payment of the consideration is regarded as evidential between the parties and does not operate as an absolute estoppel. When the land of a corporation is sold by the trustee for the payment of a lien debt under a trust deed, and bid in by a stockholder in the corporation under a parol agreement between himself, the corporation and other secured creditors that he is to do so for them at a sum sufficient to pay such secured debts, and when he does so at an insufficient sum and takes title to himself, and the sale is confirmed by the Court, an action may be maintained against him for the breach of the promise to pay the price agreed upon by parol, the same being executed, and not falling within the meaning of the statute of frauds.

3. **Contract—Trust Deeds—Sale of Land—Agreement that Land Should Bring Certain Sum.**—An agreement made between the debtor and the secured creditors that, at a sale of lands under a deed of trust, the property should be bid in at a sum not less

than that sufficient to pay such creditors, is valid, when there is no evidence that the purpose of the parties was to "chill the sale" or to reduce the price below its market value.

4. **Same—Promise to Pay Debt of Another—Statute of Frauds— Consideration.**—Where the purchaser of real property agrees, in payment of its price, to discharge the debt of another, it does not fall within the meaning of the statute of frauds; when a stockholder of a corporation agrees with it and its secured creditors that he will bid in the debtor's lands at a foreclosure sale at a sum sufficient to pay such creditors, there is a sufficient consideration, and it is not necessary that the agreement be in writing.

CIVIL ACTION, tried by *Webb, J.,* and a jury, at October Term, 1906, of the Superior Court of CABARRUS County, brought to recover the amount of certain debts originally due by the G. W. Patterson Manufacturing Company. The Court submitted these issues:.

1. Did the defendants, or either of them, agree, previous to the sale of the property described in the complaint, that they would buy the property at the sale and make the same bring the amount of the debts against the property, which amounted to the sum of $11,250, and, whether said property was bid off at said sale for less than that sum or not, they would pay said debts? Ans.: Yes.

2. What was the value of said property? Ans.: $11,250.

The defendants requested, among others, the following prayer for special instruction:

"2. In no view of the evidence can the plaintiff recover in this action against defendant James, and as to him the jury will answer the first issue 'No.'"

From a judgment in favor of the plaintiff, defendants appealed.

*W. J. Montgomery* for plaintiff.
*W. M. Smith* and *W. G. Means* for defendants.

BROWN, J. The plaintiff's evidence tends to prove that the plaintiff, with others, were creditors of the G. W. Pat-

terson Manufacturing Company, an insolvent corporation, and that their debts were secured by deed in trust conveying real property to a trustee for their benefit. Suit had been brought and a decree obtained foreclosing their lien, and the property was duly advertised for sale by the commissioner. The two defendants, Kindley and James, the former a stockholder in said corporation, met with several other stockholders for the purpose of arranging the secured indebtedness and to take steps to insure that the property would bring its value at the approaching sale. It was ascertained that the total amount of the secured indebtedness in the deed of trust was $11,250. Plaintiff's evidence tends further to prove that at the conference the defendant Kindley agreed that he would buy the property at said price and pay the indebtedness in full, whether the public bidding reached that figure or not, and it was agreed that defendant James should bid off the property for Kindley. Relying upon this agreement, the secured creditors did not bid on the property. It was "knocked off" to James for Kindley at $8,000 and the sale confirmed by the Court without opposition upon the part of plaintiff or the other creditors, who relied on Kindley's promise. The defendants offered evidence to the contrary, but the jury found for plaintiff.

*In limine,* we find no evidence whatever tending to prove that defendant James was a party to the agreement to pay the secured debts and take the mill. A careful inspection of the record discloses that such agreement, if made at all, was made by defendant Kindley alone. While James bid off the property, and now claims to be a part owner of it, there is no evidence that Kindley was authorized to speak for his co-defendant, or did speak for him, when he agreed to take the property and pay the debts. We are, therefore, of opinion that as to defendant James his Honor erred in refusing the second prayer for instructions. As no motion to nonsuit

was made at any stage of the case, a new trial must be had as to defendant James.

In behalf of the defendants, it was most ably contended by their learned counsel, Mr. Means, that the contract is void under the statute of frauds: (1) Because it is a contract to convey and purchase land and is not in writing; (2) that it is an obligation to "answer the debt, default or miscarriage of another," which must likewise be in writing.

In respect to the first contention, we will observe that it is common learning that the statute does not apply to executed contracts. And it is likewise generally held that when so much of a contract as would bring it within the statute of frauds has been executed all the remaining parts become enforcible, and the parties regain all the rights they would have had at common law. Browne on Stat. Frauds, sec. 117. Thus it is conceded that when a conveyance of land is executed and accepted, in pursuance of a prior verbal agreement, an action may be maintained for a breach of the promise to pay the price. Browne, *supra,* where the authorities are collected.

A court of equity will not allow the vendee to hold the land and at the same time refuse to pay for it. *Champion v. Mooday,* 85 Ky., 31. Therefore, in equity the receipt of the purchase-money usually contained in a deed for land is regarded as evidential and not as an absolute estoppel.

As to the second contention, we are likewise of opinion that the contract is not void as an agreement to suppress bidding and that it also does not come within the tenth section of the statute of frauds. There is no evidence here that the purpose of the parties was to "chill the sale" and to purchase the property at less than its market value. On the contrary, the agreement was evidently made without design to commit a fraud, but to make the property bring its full value and to·

enable the defendants to more conveniently acquire the title. An agreement with such purpose in view is valid. 3 Am. and Eng. Enc., pp. 506, 507, and cases cited. The agreement is not so much an agreement to pay the debts of the insolvent corporation as it is an agreement to purchase the property at a given price sufficient to pay its secured debts. The agreement, according to plaintiff's evidence, was made not only with the creditors, but also with stockholders, and was reaffirmed at a meeting of the directors the day before the sale, when plaintiff acted as chairman. The sale was the only practical method of carrying this agreement into effect and perfecting title. Having purchased the property and acquired title to it in pursuance of the agreement, the overwhelming weight of authority will hold the defendant to its performance on his part. Clark on Contracts, sec. 40 (d), and notes. One of the earliest cases in the English courts is *Williams v. Leper,* 3 Burrows, p. 1886. Leper had taken possession of the property of one Taylor, a tenant of Williams, in behalf of creditors. Williams distrained for rent. Leper verbally agreed to take the property and pay Williams' debt. The judges all agreed the case was not within the statute as a promise to pay the debt of another. *Lord Mansfield* said: "The goods are the fund; the question is not between Taylor and the plaintiff. The plaintiff had a lien upon the goods." *Mr. Justice Wilmot* held that the action could be maintained against Leper as money had and received for plaintiff's use.

In our case the defendant was not dealing with a stranger to the property, but with those who practically owned and controlled it, and who were to all intents and purposes vendors of it. This brings it within that class of cases mentioned by Mr. Reed as not within the statute. "A common example  *  *  * is where the purchaser of property

agrees, in payment of its price, to discharge a debt due by the seller. This category does not in principle differ much from promises in consideration of a fund." 1 Reed Stat. Frauds, sec. 115. "A deed to the defendants, in consideration of their paying the vendor's debts, is not within the statute of frauds; the promise is not a guaranty, but to pay the guarantor's own debt, and the liability is not confined to the amount of the consideration for the land." Reed, *supra,* and cases cited. A common example is the purchase of a partnership, a business interest or a stock of goods upon an agreement to take the goods and pay the debts. Where the purchaser takes the goods under such agreement he will be compelled to pay the debts. *Lee v. Fountaine,* 10 Ala., 764; *Bracken v. Dillon,* 64 Ga., 251; *Shaver v. Adams,* 32 N. C., 14.

The contract or agreement, as testified to by plaintiff, upon which he sues, is an original contract between the parties upon a sufficient legal consideration. *Shaver v. Adams, supra; Cooper v. Chambers,* 15 N. C., 261.

There are one or two cases in our reports which appear to support defendants' contention, one of which is cited by Mr. Reed in his note to section 116. That author, however, says: "The weight is clearly in favor of the right of the creditor to sue when the promisor has funds of the debtor in his hands, or owes the latter under an obligation which by the guaranty he proposes to discharge."

In 29 Am. and Eng. Enc., 914, the principle is stated, in line with the text-writers and precedents, as follows: "A promise by the purchaser of property, and as a part of the consideration for the purchase, to pay a debt of the seller, or a promise to pay a claim of the seller against a third person, is a promise to pay the purchaser's debt and not within the statute. For the same reason the purchaser's oral promise,

as a part of the transaction, to pay and discharge an incumbrance upon the property purchased is valid." The author cites cases from almost every State in support of his text, and several from this Court. A leading case in this country is *Barker v. Bricklin*, 2 Denio, N. Y., 45, where all the older cases are reviewed.

In *Rice v. Carter*, 33 N. C., 298, the facts were that A sold land to B. As the price of the land, B promised verbally to pay $100 to C, to whom A was indebted. In that case *Pearson, J.*, says: "The case does not fall under the operation of this section, for the promise is to pay the debt, not of another person, but of the very person to whom the promise is made, and it is well settled that such a promise does not fall within the operation of this section of the statute." *Ashford v. Robinson*, 30 N. C., 114; *Rowland v. Rorke*, 49 N. C., 339; *Threadgill v. McLendon*, 76 N. C., 24; *Mason v. Wilson*, 84 N. C., 54. In *Whitehurst v. Hyman*, 90 N. C., 487, it is held that a promise based upon a new and original consideration of benefit or harm, moving between the party to whom the debt is due and the party agreeing to pay the same, is not "a promise to answer the debt or default" of another, and need not be in writing. Many authorities are cited in the opinion in that case by *Mr. Justice Merrimon* which support the conclusion of the Court. *Little v. McCarter*, 89 N. C., 233. Practically the same principle is asserted by this Court as late as 1904, through *Mr. Justice Walker*, in *Voorhees v. Porter*, 134 N. C., 591. In the case at bar, defendants, according to plaintiff's evidence, agreed, not only with the creditors, but with the debtor corporation, represented by its directors and stockholders, to buy its property at the sale for $11,250 and to pay its debts, which were a lien thereon. He purchased the property at $8,000, acquired title and now refuses to pay the balance of the indebt-

edness. In the language of *Lord Mansfield* in *Williams v. Leper, supra,* "This case has nothing to do with the statute of frauds. It is rather a fraud in the defendant to detain the forty-five pounds from the plaintiff, who had a lien on the goods." It is contended by defendants that the indebtedness for which judgment was rendered is not admitted by the answer. Section 4 of the complaint sets out the evidences of debt for which plaintiff alleges he is liable as endorser for the Patterson Manufacturing Company, as well as that due him personally. This is specifically admitted by the first paragraph of the answer. All of this indebtedness is secured by the trust, and all of it, the plaintiff avers, the defendants agreed to pay as part of the purchase-price of the property. No contest was made in the Superior Court in respect to that matter and no appropriate issue tendered. By mutual consent the cause was tried solely upon the controversy embodied in the issues submitted.

It does, however, appear that the notes set out in paragraph four of the complaint should have been credited with their *pro rata* portion of the $8,000 paid by defendant on the purchase-money to the commissioner, which credits appear in the account stated by John M. Cook, Clerk Superior Court, August Term, 1905. If these credits were given before rendition of the judgment, then the judgment is correct. If they have not been credited at all, then the Court below will modify the judgment by allowing them.

We find no errors in the record as to defendant Kindley, and as to him the judgment is affirmed, subject to the right of the Superior Court to allow said credits. As to defendant James, there must be a trial *de novo.*

New Trial as to defendant James.

Affirmed as to defendant Kindley.

Let all the costs of this Court be taxed against defendant Kindley.