C. T. PEELE v. ISA G. POWELL, Administratrix.

(Filed 9 November, 1911.)

1. **Statute of Frauds—Debt or Default of Another—Parol Promise— Original Liability.**

The liability of a promisor to answer, "upon special promise, the debt, default, or miscarriage of another person" under the statute of frauds, is governed by whether the promise creates an original obligation or is collateral to it and merely superadded to the promise of another to pay the debt, he remaining liable, for in the latter instance the promisor is not liable unless there is a writing to that effect, whether the promise is made at the time the debt is created or not.

2. **Same—Credit.**

The obligation of a promisor to answer for the "debt, default, or miscarriage of another" is original and binding if made at the time or before the debt is created, when the credit is given solely to the promisor or to both.

3. **Same—Express Promise—Consideration—Evidence.**

To make the oral special promise binding upon the promisor to answer for the debt, etc., of another, the promise must be express and not solely implied by law, and founded upon a con-

sideration such as the immediate and pecuniary benefit of the promisor in the transaction, as in instances of joint principals, or the release of the original debtor, or harm or benefit passing between the promisor and the creditor, or to pay out of a particular fund of the debtor in the hands of the promisor; but if the funds are not actually in his hands and he does not receive them, his promise is not personally binding.

4. Statute of Frauds—Debt or Default of Another—Consideration Expressed—Implication.

A written promise to answer for the debt, etc., of another need not express the consideration, and it may be established by parol.

5. Statute of Frauds—Debt or Default of Another—Parol Promise—Liability—Definition.

A parol promise to answer for the debt, etc., of another which is not enforcible is defined to be "an undertaking by a person not before liable, for the purpose of securing or performing the same duty for which the party for whom the undertaking is made continues liable." *Sheppard v. Newton,* 139 N. C., 535, cited and approved.

6. Statute of Frauds—Debt or Default of Another—Evidence of Debt—Deceased—Transactions and Communications.

In an action upon the special promise of the deceased, against his administrator, for goods sold and delivered to another, it is competent for the plaintiff to prove the indebtedness of such other person by his verified account and other competent evidence, as such would not involve evidence of transactions and communications with a deceased person, prohibited by statute, but to recover of the estate of the deceased, the promise to answer for the debt must be shown in a manner not prohibited by the statute of frauds.

7. Statute of Frauds—Debt or Default of Another—Promise—Running Accounts—Specific Occasion—Evidence.

In an action against a promisor to recover on an account for goods sold and delivered, there was testimony by a witness, an employee of the plaintiff, that about the time of the sale of the last item the plaintiff told him not to let the debtor have any more goods without the written order of the promisor; that the debtor had no credit: *Held,* evidence that the debtor had credit prior to that time, and a general statement made by the witness that the goods had been theretofore sold on the credit extended the promisor must be accompanied by evidence of something said or done by the promisor authorizing the extension of credit, to have any weight.

8. **Statute of Frauds—Debt or Default of Another—Promise—Insufficient Evidence.**

In an action to hold an alleged promisor liable for a running account of goods sold to another, evidence that the promisor told the plaintiff to let the debtor have goods and he would see that they were paid for, without anything to show that goods were sold the debtor at that time, should not be construed as prospective and retrospective, so as to include goods sold before and after that time.

9. **Same—Declarations.**

Evidence of a parol declaration of a promisor to pay the debt of another, in an action upon the promise, that the promisor had told the plaintiff that the debt was all right, is not sufficient to make the promisor liable.

10. **Evidence—Running Account—Book Items.**

In an action upon a running account, the items appearing upon the ledger and day-book of the plaintiff are mere declarations in his own interest, and as such are incompetent when standing alone and unsupported by proper evidence to make them competent.

WALKER, J., dissenting; HOKE, J., concurring in dissenting opinion.

APPEAL from *Carter, J.,* at May Term, 1911, of BERTIE.

This is an action brought by C. T. Peele against Isa G. Powell, administratrix of Edgar Powell, to recover $286.65 and interest thereon from 27 March, 1907, the value of goods sold and delivered to J. T. Cook, for which it is alleged the defendant's intestate is liable.

The plaintiff offered the following evidence: An itemized and verified statement of account of goods sold and delivered to J. T. Cook for the amount alleged to be due by him in his complaint. Objection by defendant sustained, and plaintiff excepted.

The account was against Tom Cook, Edgar Powell, security. Luther Bryant testified: That he was clerk in plaintiff's store from 1 January, 1906, till the end of the year 1908; that for all goods sold to J. T. Cook from 22 February, 1906, to 27 March, 1907, the credit therefor was extended to Edgar Powell; that about the time of the last-mentioned date Mr. Peele told him (the witness) not to let Mr. Cook have any more goods

without a written order from Mr. Powell. Cook had no credit at that time and was a tenant of Mr. Powell. That in July, 1906, he heard Powell tell plaintiff to let Cook have goods and he would see that they were paid for.

F. L. Bishop testified as follows: "On or about 25 March, 1908, I met Mr. Powell in the road, and in the conversation between us, Mr. Powell stated that Mr. Peele had him charged with a great big account that Mr. Cook had made at his store, and that he did not think that he ought to pay it, because Mr. Peele ought not to have let Mr. Cook have so many goods on such a crop as Mr. Cook was then working, but that he (Mr. Powell) had told Mr. Peele to let Mr. Cook have some goods, and that he reckoned he would have to pay it. I then told Mr. Powell what Mr. Peele had told me to tell him; that he presented Mr. Cook's account to him (Powell), and unless he made some arrangements about that account, that he (Peele) was going to take some steps to collect it; that Mr. Peele said that he hated to take such measures against him, and that he wanted to avoid it if possible, but that he could not afford to lose the account."

L. J. Brewer testified: That in March, 1906, he was at Powell's house and saw some one going out the gate, and that he asked Mr. Powell who it was, and he replied that it was Charlie Peele, who had been to see him about Cook's account, and that he told him that it was all right. He testified, also, that on another occasion, at the sheep shelter, in 1908, that Mr. Powell told him that Mr. Peele had a large account against him for Tom Cook, and that it amounted to about $290.

The plaintiff offered to prove by himself that he sold the goods to Cook, and the amount of the sales, which was excluded, and the plaintiff excepted. He also offered in evidence his ledger and day-book, for the purpose of proving the account against Cook, and excepted to its exclusion.

The principal controversy between the plaintiff and the defendant is as to the effect of the evidence, the defendant contending that it is not sufficient, under the statute of frauds, to bind the estate of his intestate.

His Honor was of this opinion, and upon the conclusion of the evidence entered judgment of nonsuit, and the plaintiff excepted and appealed.

*L. L. Smith for plaintiff.*
*Winston & Matthews for defendant.*

ALLEN, J., after stating the case: The liability of a promisor to answer, "upon special promise, the debt, default, or miscarriage of another person" has been considered in numerous decisions of this Court, and there is frequently much difficulty in determining whether a particular promise is within the statute.

The term "special promise" means an express promise, and not one implied by law. Browne Stat. Frauds, sec. 166.

Whether oral or in writing, it must have a consideration to support it (*Draughon v. Bunting,* 31 N. C., 10; *Stanly v. Hendrix,* 35 N. C., 87; *Combs v. Harshaw,* 63 N. C., 198; *Haun v. Burrell,* 119 N. C., 547); but if in writing, the consideration need not appear in the writing, and may be shown by parol. *Nichols v. Bell,* 46 N. C., 32; *Haun v. Burrell,* 119 N. C., 547.

If the promise is based on a consideration, and is an original obligation, it is valid, although not in writing. *Hospital Assn. v. Hobbs,* 153 N. C., 188.

The obligation is original if made at the time or before the debt is created and the credit is given solely to the promisor, as in *Morrison v. Baker,* 81 N. C., 80; *Sheppard v. Newton,* 139 N. C., 536, or if credit is given on the promises of both, as principals and as jointly liable, and not on the promise of one as the surety for the other. Browne Stat. Frauds, sec. 197; *Horne v. Bank,* 108 N. C., 119.

So is a promise, made after the debt is created, when by reason of the promise the original debtor is released (*Sheppard v. Newton,* 139 N. C., 379; *Jenkins v. Holly,* 140 N. C., 379), and also if it is a promise to pay out of funds placed in the hands of the promisor by the debtor (*Stanly v. Hendrix,* 35 N. C., 86; *Threadgill v. McLendon,* 76 N. C., 24; *Mason v. Wilson,* 84 N. C., 53; *Voorhees v. Porter,* 134 N. C., 604), or if a promise based on a new consideration of benefit or harm passing *between the promisor and the creditor. Whitehurst v. Hyman,* 90 N. C., 489.

If, however, there is a promise to pay out of a particular fund, and the fund is not received by the promisor, it is not binding. *Bagley v. Sasser,* 55 N. C., 350.

If one, under the former practice, was arrested in a civil action, and was released on the oral promise of another to pay the debt, the promise was binding because the release from arrest satisfied the original debt (*Cooper v. Chambers,* 15 N. C., 261; *Draughon v. Bunting,* 31 N. C., 10), but it was otherwise of an oral promise to pay upon condition that the creditor would not arrest the debtor, because the debtor remained liable. *Britton v. Thrailkill,* 50 N. C., 331; *Rogers v. Rogers,* 51 N. C., 300; *Combs v. Harshaw,* 63 N. C., 198.

Where the promise is for the benefit of the promisor, and he has a personal, immediate, and pecuniary benefit in the transaction, as in *Neal v. Bellamy,* 73 N. C., 384, and in *Dale v. Lumber Co.,* 152 N. C., 653, or where the promise to pay the debt of another is all or part of the consideration for property conveyed to the promisor, as in *Hockaday v. Parker,* 53 N. C., 17; *Little v. McCarter,* 89 N. C., 233; *Deaver v. Deaver,* 137 N. C., 242; *Satterfield v. Kindley,* 144 N. C., 455; or is a promise to make good notes transferred in payment of property, as in *Adcock v. Fleming,* 19 N. C., 225; *Ashford v. Robinson,* 30 N. C., 114, and in *Rowland v. Rorke,* 49 N. C., 337, the promise is valid although in parol.

If, however, the promise does not create an original obligation, and it is collateral, and is merely superadded to the promise of another to pay the debt, he remaining liable, the promisor is not liable, unless there is a writing; and this is true whether made at the time the debt is created or not. *Smithwick v. Shepherd,* 49 N. C., 197; *Bagley v. Sasser,* 55 N. C., 350; *Scott v. Bryan,* 73 N. C., 582; *Rowland v. Barnes,* 81 N. C., 239; *Haun v. Burrell,* 119 N. C., 547; *Garrett-Williams Co. v. Hamill,* 131 N. C., 59; *Sheppard v. Newton,* 139 N. C., 535, and *Supply Co. v. Finch,* 147 N. C., 106.

In our opinion, this case falls within the last class.

There is no evidence of benefit to the intestate, and while the jury would have been justified in finding from the evidence

that he promised to pay, it is not sufficient to sustain a finding that it was more than a promise to pay the debt of Cook, for which he (Cook) remained liable.

The verified account and the evidence of the plaintiff were competent to prove the indebtedness of Cook, as neither involved a transaction or conversation with the deceased, and there would be error in their exclusion, which would entitle the plaintiff to a new trial, if there was evidence of a valid promise of the intestate to pay.

It was because his Honor thought there was no such evidence that he ruled as he did, and we concur in his opinion.

The definition of a promise to answer for the debt of another, which is not enforcible, adopted in our Court and applicable here, is: "An undertaking by a person not before liable, for the purpose of securing or performing the same duty for which the party for whom the undertaking is made continues liable." *Sheppard v. Newton, supra.* Tested by this rule, we think the action cannot be maintained.

The account began on 22 February, 1906, and ended 27 March, 1907. The witness for the plaintiff, Bryant, testified that about the time of the last date (27 March, 1907) the plaintiff told him not to let Cook have any more goods without a written order from Powell, and that Cook had no credit at that time. The inference is that Cook had credit prior to the time, and no goods were afterwards sold to him. It is true that same witness also said that for all goods sold to Cook, credit was extended to Powell; and this would be entitled to great weight if he had stated something said or done by Powell authorizing the extension of credit. A similar statement was made by a witness in *Garrett-Williams Co. v. Hamill,* 131 N. C., 59, and was held insufficient to charge the promisor.

Again he says, in July, 1906, he heard Powell tell the plaintiff to let Cook have goods, and he would see that they were paid for. He does not state whether or not any goods were sold to Cook at that time, and so far as we can see, the promise related to a single transaction, and there is no evidence that it is embraced in the account sued on.

We would not be justified in giving such a promise both a retrospective and prospective construction, to include the part of the account before the promise and that part made after it.

The evidence of the witnesses Brewer and Bishop does not show liability on the part of the intestate.

The most material statement made by either is by Brewer: "That in March, 1906, he was at Powell's house and saw some one going out the gate, and that he asked Mr. Powell who it was, and he replied that it was Charlie Peele, who had been to see him about Cook's account, and that he told him that it was all right."

We will assume that "him," as last used, applies to Peele, although it is not certain; but, if so, it was "Cook's account" that was all right, and there is no suggestion in the evidence that Cook was not liable therefor. Suppose he had said, "Cook owes Peele an account, and I have promised to pay it." No one would contend that this would create a legal liability, and the evidence is not as strong as this.

The action is against the estate of a deceased person. The intestate lived one year and eight months after the last item in the account, and no action was instituted against him during this period. The defendant administratrix has no personal knowledge of the transactions, and death has destroyed any opportunity of replying to the evidence of the plaintiff. Under these circumstances the evidence should be carefully examined, and if it does not conform to the requirements of the law, it should be so declared.

The ledger and day-book of the plaintiff were properly excluded, as they were mere declarations of the plaintiff in his own interest. *Bank v. Clark*, 8 N. C., 36; *Bland v. Warren*, 65 N. C., 374; *Dyeing Co. v. Hosiery Co.*, 126 N. C., 294.

We find

No error.

WALKER, J., dissenting: It is suggested, in opening the opinion of the Court, that there is frequently much difficulty in determining whether a particular promise to answer for the debt, default, or miscarriage of another person falls within the

provisions of the statute of frauds. It would not seem so difficult if we did not attempt to apply well recognized principles, which are clearly stated in the opinion, to disputed facts, and the situation would be much simplified and the difficulty otherwise encountered would be removed if, when the facts are not settled, the case should be submitted to the jury, which is invariably done in other cases, to ascertain what the promise or contract was or what was the intention, understanding, and agreement of the parties. Was it the intention of Peele and Powell that the latter should become the sole and responsible debtor, or, in other words, did he promise *for himself* to pay the debt, or did he promise as surety or guarantor for Cook? In the former case the promise would be an original one, not within the statute, and in the latter it would be a superadded one, Cook still remaining liable for the debt. I have the highest and best authority for saying that this case should have gone to the jury, so that they might find what was the promise. It was so held (*Chief Justice Pearson* delivering the opinion) in *Threadgill v. McLendon,* 76 N. C., 24, when there was much less dispute about the facts, or where the facts were much more significant of the true nature of the promise than are those in this case. In *Threadgill's case,* McLendon requested Threadgill to furnish goods and supplies to one Treadaway (who was a cropper of McLendon) such goods and supplies as he might want, and he (McLendon) would see that Threadgill was paid for them, and that upon this request and promise Treadaway obtained credit at Threadgill's store and received the goods as he wanted them, amounting in value to $156. That of this account, $56 was charged to McLendon and $100 to Treadaway. This Court, after stating that the trial judge had attached too much importance to the manner of making the entries upon the books, said: "Considering the fact that the defendant was bound to furnish the cropper with necessary supplies and had a lien upon the crop, it ought to have been left to the jury to say whether the credit was not in the first instance given to the defendant and the entries on the books made simply to discriminate what was for farm purposes and what for the

156—36

personal use of the cropper and his family." Ours is a much stronger case than that for a submission to the jury of the vital question as to the nature of the promise, as understood by the parties. I find abundant evidence in the record which tends most strongly to show that Powell understood and agreed with Peele to become himself the payer, regardless of Cook, and that he was looked to as the sole responsible debtor. And still weightier, if anything, as an authority, is the opinion of the present *Chief Justice* in *Jenkins v. Holley,* 140 N. C., 379, where it is said: "The evidence offered by plaintiff should have been left to the jury, with any evidence the defendant might offer, upon the issue whether Holley became sole debtor or was merely responsible if Wilson did not pay." The facts of that case are substantially like those we find in this record. There was evidence in that case, and there is evidence here, that the plaintiff had "looked to" the defendant as his debtor, and that defendant said it was "all right"; and upon this state of facts, it was said in *Jenkins v. Holley:* "The language was strong, if not, indeed, conclusive evidence" of a promise not within the statute; and then follows what is above quoted from the opinion, to the effect that the case should, at least, have gone to the jury to ascertain the intention of the parties.

In *Sheppard v. Newton,* 139 N. C., 536, the judge held, as did the lower court in this case, that the promise was within the statute, and ordered a nonsuit. This ruling was reversed by this Court upon appeal, and a new trial awarded, *Justice Hoke* saying, in the course of the opinion: "A statement on the same subject, somewhat more extended and very satisfactory, will be found in Clark on Contracts, p. 67, as follows: 'There must either be a present or a prospective liability of a third person for which the promisor agrees to answer. If the promisor becomes himself primarily and not collaterally liable, the promise is not within the statute, though the benefit from the transaction accrues to a third person. If, for instance, two persons come into a store and one buys, and the other, to gain him credit, promises the seller, "If he does not pay you, I will," this is a collateral undertaking, and must be in writing; but if

he says, "Let him have the goods and I will pay," or "I will see you paid," and credit is given to him alone, he is himself the buyer and the undertaking is original. In other words, whether the promise in such a case is within the statute depends on how the credit was given. If it was given exclusively to the promisor, his undertaking is original; but it is collateral if any credit was given to the other party.' To like effect are the decisions of our own Court. *Whitehurst v. Hyman,* 90 N. C., 487; *White v. Tripp,* 125 N. C., 523." It will be observed that the case he puts, where the promisor is liable and cannot hide himself behind the statute, is the very one we have under consideration. "Let him have the goods and I will pay," or "I will see you are paid."

We will see presently, when I review the evidence, that credit was given to Powell alone. It was not necessary that Powell should say, as intimated in the opinion, that credit should be given to him alone, in order to bind him, or that he should have expressly assented to such a course; but if he requested that the goods be sold on his credit, as he most assuredly did, and Peele, acting upon his request and induced thereby, sold the goods on his credit and looked to him alone, the promise was binding as an original one. It was, at least, as *Chief Justice Clark* said, and as *Justice Hoke* clearly suggests, a question for the jury as to what was meant and as to "how the credit was given." *Sheppard v. Newton, supra.* Quoting from that case again, its concluding words: "Applying these principles to the foregoing statement of the evidence, the Court is of opinion that there was error in directing a nonsuit, and the plaintiff is entitled to have his cause submitted to the jury on the question whether the defendant is not answerable as the original or present debtor on the plaintiff's demand." This is striking language and worthy of much consideration. It would attract the attention of any one familiar with the evidence in this case, as showing a close similarity between the two.

Let me now notice two other cases decided by this Court. In *White v. Tripp,* 125 N. C., 523, it appeared that the goods were

charged to both the promisor and the person (defendant's son)
who received the goods, or for whose benefit they were pur-
chased.    The Court held that this fact was not controlling and
that the case was one for the jury.    Plaintiff testified that he
gave sole credit to the father, Joseph Tripp, without there
being any evidence that the latter had assented to such an
arrangement.    It did not occur to the Court that such assent
was necessary.    It was held that the case was one for the jury
as to the intention of the parties, upon the question as to whom
was the credit given.    The Court, with reference to the state
of the proof, said: "If the defendant authorized the selling to
the son, the plaintiff could recover, although the goods were
charged to J. B. Tripp in the manner stated in the case.    He
also charged the jury on the law of principal and agent, and
that if the credit was given to J. B. Tripp, with Joseph Tripp
as surety, then the defendant would not be liable.    There is
nothing in these instructions of which the defendant can justly
complain.    The promise, as the jury have found it to be under
the charge, is not required to be in writing.    *Neal v. Bellamy,*
73 N. C., 384.    The liability of the defendant depends upon
his agreement with or promise to the plaintiff, and not upon
the manner in which the plaintiff stated the account on his
books.    The latter was evidence, properly before the jury, under
the circumstances, and for the purpose already stated."    As
will be seen, the charge was approved and the judgment was
affirmed, the Court holding that the liability of Joseph Tripp,
the promisor, depended upon his agreement with the plaintiff,
and not upon the manner in which the goods were charged on
the books, it being for the jury to say what was the intention.
*Justice Hoke,* in *Dale v. Lumber Co.,* 152 N. C., 651, states the
law clearly, and in principle that case is not unlike this one.
He says: "In *Emerson v. Slater,* 63 U. S., 28-43, in a decision on
this section of the statute of frauds, the Court said: 'But when-
ever the main purpose and object of the promisor is not to
answer for another, but to subserve some pecuniary or business
purpose of his own, involving either a benefit to himself or
damage to the other contracting party, his promise is not within

the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.' This position has been sustained and applied in other cases by the same Court, notably in *Davis v. Patrick,* 141 U. S., 479, in which it was held: 'In determining whether an alleged promise is or is not a promise to answer for the debt of another, the following rules may be applied: (1) If the promisor is a stranger to the transaction, without interest in it, the obligations of the statute are to be strictly upheld; (2) but if he has a personal, immediate, and pecuniary interest in a transaction in which a third party is the original obligor, the courts will give effect to that promise. The real character of a promise does not depend altogether upon form of expression, but largely upon the situation of the parties, and upon whether they understood it to be a collateral or direct promise.' "

Powell had a business purpose, and, too, a pecuniary one to subserve, as appears in this case, as Cook was his tenant, without credit and unable to get supplies to make his crop without the credit of Powell at Peele's store. He made the promise to advance his own interests, and no doubt received the full benefit of it in the way of rent and, perhaps, enough besides to pay for the goods and supplies Peele furnished to his tenant Cook, at his request, as he had a lien under the statute for both rent and advancements. Therein consists the extreme hardship of the Court's ruling, and the facts of the case so strongly appeal to my sense of justice and right, as did the facts in *Liverman v. Cahoon, ante,* 187, at this term, where the statute of limitations was pleaded, that I could not, and cannot in this case, refrain from giving my reasons at length for my earnest dissent from the conclusion, as well as the reasoning, of the Court. I think that in both cases the defendants were seeking to take an unconscionable advantage of the plaintiffs, and one which the law, according to my understanding of it, did not countenance, much less justify. The statute of limitations and the statute of frauds are to be considered as good legal defenses, when applicable to the facts, but they were designed, as *Chief Justice Pearson* said in *Threadgill v. McLendon, supra,* "to prevent fraud" and not as a cloak for it.

There is no evidence in this case that the plaintiff ever trusted Cook for a moment, for it appears that he was utterly insolvent and without credit, and for that very reason the promise was made by Powell. Who can doubt, upon the evidence, that the credit of Powell alone entered into the transaction? He knew his tenant had no credit, and that his crop would be lost unless he should become the debtor to Peele. There is, at least, evidence of all this, which should have been submitted to the jury.

Our judicial duties at this term have been so onerous and exacting that I have little or no time to examine the authorities very closely, but a mere cursory reading of them warrants me in saying that they fully support my conclusion. "An oral promise to pay for goods furnished to a third person at the request of the promisor, and on his sole credit, is an original undertaking and not within the statute of frauds. The same rule applies in respect of other considerations moving from the promisee and beneficial to a third person at the request and upon the sole credit of the promisor, such as the advancing of money, the rendering of services, renting premises, bailing goods or supplying board." 29 Am. and Eng. Enc. of Law, 923-930, where the law is fully stated and authority will be found covering every point in this case, and especially does it sustain the view that the case is, at least, one for the jury. In *Morrison v. Baker,* 81 N. C., 76, it was held that "Where goods are furnished to A. upon the unconditional promise of B. to pay for them, it is not an undertaking to pay the debt of another, but the personal debt of B."

It is clear to my mind, upon the conceded facts, that the promise of Powell to Peele was, in law, not a collateral, but an original one; but if not so, as matter of law, the question as to the nature of the promise should have been submitted to the jury.

Now as to the evidence: Luther Bryant testified: "I was a clerk in plaintiff's store from 1 January, 1906, till the end of the year 1908; for all goods sold to J. T. Cook from 22 February, 1906, to 27 March, 1907, the credit therefor was extended to Edgar Powell; that about the time of the last-men-

tioned date Mr. Peele told me not to let Mr. Cook have any more goods without a written order from Mr. Powell. Cook had no credit at that time, and was a tenant of Mr. Powell."

It is true, he afterwards said that Powell told plaintiff "to let Cook have the goods and he would see that they were paid for." But how does this affect Powell's liability? It does not exclude the idea that he would be solely responsible to Peele. Identical words were not allowed any such effect in *Threadgill v. McLendon, supra.* They rather strengthen the other evidence. The Court says it does not appear that he let Cook have any goods at that time. Why, Luther Bryant had already said that there was a running account at the store from 22 February, 1906, to 27 March, 1907, goods having been furnished between those dates by Peele to Cook, solely upon Powell's credit. It is also stated by the Court, in the opinion, that Peele told his clerk, Bryant, about 27 March, 1907, not to let Cook have any more goods without a written order from Powell, and that Cook had no credit, and it is argued from this that Cook had credit prior to that time and no goods were afterwards sold to him; but no such inference, I respectfully submit, is at all warranted. Bryant expressly stated that Cook *never* had any credit between 22 February, 1906, and 27 March, 1907. It makes no difference whether he got any goods afterwards or not. Besides, the court excluded all evidence as to the account between Peele and Cook, and thus prevented the plaintiff from proving and developing his case. His ruling was wrong, of course, as the transaction between Peele and Cook was no transaction with the deceased party, Powell. The reason why Bryant was instructed not to let Cook have any more goods without an order from Powell was that he was increasing his account to such an extent and so rapidly that he thought it right to notify Powell and get his order. Powell himself referred to this afterwards, according to the witness F. L. Bishop. It also appears from Bishop's and Brewer's testimony, that Powell admitted his liability to Peele and stated that it was "all right." This kind of admission is held to be some evidence of an independent and original promise, in the beginning of the transaction, to pay

for the goods himself, as will appear by reference to the Am. and Eng. Enc. of Law above cited.  It is not necessary to give the promise "a retrospective and prospective construction to include the part of the account before the promise and that part made after it," as said in the Court's opinion, for there is ample evidence to show a promise both at the time of the first conversation, before any goods were furnished, and afterwards. And, again, when Powell said "it was all right," it is plain to my mind, from the context, what he meant, and there is but one interpretation to be placed upon his words.  He referred to his liability for the account, for that was what Peele had gone to his home to see him about, and nothing else.  In one sense he was referring to "Cook's account," and that is that Cook had got the goods which Powell had promised to pay for, and he went to see him about it for the purpose of getting his money.  But he *never* intimated, by word or act, that he looked to Cook for the money.  Why should he look to an insolvent? "You can't get blood out of a turnip" (*ex nihilo nihil fit*), to speak figuratively, and Peele knew that Cook would never have any money for him, and for that reason he depended upon Powell alone.

The fact that Powell is dead is utterly irrelevant to the question.  The statute of frauds does not protect a man because he is dead, any more than it does a living person.  They both stand with reference to it on an equality—one has no greater right under it and is entitled to no greater consideration than the other.

The case of *Garrett-Williams Co. v. Hamill,* 131 N. C., 57, so much relied on by the Court, with other cases of a like kind, and which was strenuously urged upon our attention by defendant's counsel as directly in point, does not fit this case by any means.  The promise there was by T. A. Hamill to pay if F. A. Hamill did not.  "We went to Whitakers, and T. L. Hamill bought goods and said ship goods in future to F. A. Hamill whenever he needed them until he notified us not to ship, and he would see us paid, and to collect from F. A. Hamill when I came around, and if F. A. Hamill failed to pay, he

would." That was distinctly a collateral promise—a promise of T. A. Hamill *superadded* to that of the principal debtor, F. A. Hamill.

It seems to me that the necessity which the Court found for explanatory argument upon the facts, in order to show that the statute does not apply, is a cogent reason for sending the case to a jury.

My conclusion is (1) that the plaintiff was deprived of the right to develop his case by erroneous rulings of the court upon the testimony, and (2) that the evidence is such as to require the intervention of a jury; and for either or both reasons the nonsuit should be set aside and a new trial ordered.

JUSTICE HOKE concurs in the dissenting opinion of JUSTICE WALKER.