WALKER, J., dissenting; HOKE, J., concurring in dissenting opinion.
This is an action brought by C. T. Peele against Isa G. Powell, administratrix of Edgar Powell, to recover $286.65 and interest thereon from 27 March, 1907, the value of goods sold and delivered to J. T. Cook, for which it is alleged the defendant's intestate is liable.
The plaintiff offered the following evidence: An itemized and verified statement of account of goods sold and delivered to J. T. Cook for the amount alleged to be due by him in his complaint. Objection by defendant sustained, and plaintiff excepted. *Page 448 
The account was against Tom Cook, Edgar Powell, security. Luther Bryant testified: That he was clerk in plaintiff's store from 1 January, 1906, till the end of the year 1908; that for all goods sold to J. T. Cook from 22 February, 1906, to 27 March, 1907, the credit therefor was extended to Edgar Powell; that about the time of the last-mentioned date Mr. Peele told him (the witness) not to let Mr. Cook have any more goods without a written order from Mr. Powell. Cook had no credit at that time and was a tenant of Mr. Powell. That in (556) July, 1906, he heard Powell tell plaintiff to let Cook have goods and he would see that they were paid for.
F. L. Bishop testified as follows: "On or about 25 March, 1908, I met Mr. Powell in the road, and in the conversation between us, Mr. Powell stated that Mr. Peele had him charged with a great big account that Mr. Cook had made at his store, and that he did not think that he ought to pay it, because Mr. Peele ought not to have let Mr. Cook have so many goods on such a crop as Mr. Cook was then working, but that he (Mr. Powell) had told Mr. Peele to let Mr. Cook have some goods, and that he reckoned he would have to pay it. I then told Mr. Powell what Mr. Peele had told me to tell him; that he presented Mr. Cook's account to him (Powell), and unless he made some arrangements about that account, that he (Peele) was going to take some steps to collect it; that Mr. Peele said that he hated to take such measures against him, and that he wanted to avoid it if possible, but that he could not afford to lose the account."
L. J. Brewer testified: That in March, 1906, he was at Powell's house and saw some one going out the gate, and that he asked Mr. Powell who it was, and he replied that it was Charlie Peele, who had been to see him about Cook's account, and that he told him that it was all right. He testified, also, that on another occasion, at the sheep shelter, in 1908, that Mr. Powell told him that Mr. Peele had a large account against him for Tom Cook, and that it amounted to about $290.
The plaintiff offered to prove by himself that he sold the goods to Cook, and the amount of the sales, which was excluded, and the plaintiff excepted. He also offered in evidence his ledger and day-book, for the purpose of proving the account against Cook, and excepted to its exclusion.
The principal controversy between the plaintiff and the defendant is as to the effect of the evidence, the defendant contending that it is not sufficient, under the statute of frauds, to bind the estate of his intestate. His Honor was of this opinion, and upon the conclusion of (557) the evidence entered judgment of nonsuit, and the plaintiff excepted and appealed. *Page 449 
After stating the case: The liability of a promisor to answer, "upon special promise, the debt, default, or miscarriage of another person" has been considered in numerous decisions of this Court, and there is frequently much difficulty in determining whether a particular promise is within the statute.
The term "special promise" means an express promise, and not one implied by law. Browne Stat. Frauds, sec. 166.
Whether oral or in writing, it must have a consideration to support it (Draughan v. Bunting, 31 N.C. 10; Stanly v. Hendrix, 35 N.C. 87; Combsv. Harshaw, 63 N.C. 198; Haun v. Burrell, 119 N.C. 547); but if in writing, the consideration need not appear in the writing, and may be shown by parol. Nichols v. Bell, 46 N.C. 32; Haun v. Burrell, 119 N.C. 547.
If the promise is based on a consideration, and is an original obligation, it is valid, although not in writing. Hospital Assn. v. Hobbs,153 N.C. 188.
The obligation is original if made at the time or before the debt is created and the credit is given solely to the promisor, as in Morrison v.Baker, 81 N.C. 80; Sheppard v. Newton, 139 N.C. 536, or if credit is given on the promises of both, as principals and as jointly liable, and not on the promise of one as the surety for the other. Browne Stat. Frauds, sec. 197; Horne v. Bank, 108 N.C. 119.
So is a promise, made after the debt is created, when by reason of the promise the original debtor is released (Sheppard v. Newton, 139 N.C. 379;Jenkins v. Holly, 140 N.C. 379), and also if it is a promise to pay out of funds placed in the hands of the promisor by the debtor (Stanley v.Hendrix, 35 N.C. 86; Threadgill v. McLendon, 76 N.C. 24; Mason v.Wilson, 84 N.C. 53; Voorhees v. Porter, 134 N.C. 604), or if a promise based on a new consideration of benefit or harm passing between thepromisor and the creditor. Whitehurst v. Hyman, 90 N.C. 489.
If, however, there is a promise to pay out of a particular (558) fund, and the fund is not received by the promisor, it is not binding. Bagley v. Sasser, 55 N.C. 350.
If one, under the former practice, was arrested in a civil action, and was released on the oral promise of another to pay the debt, the promise was binding because the release from arrest satisfied the original debt (Cooper v. Chambers, 15 N.C. 261; Draughan v. Bunting, 31 N.C. 10), but it was otherwise of an oral promise to pay upon condition that *Page 450 
the creditor would not arrest the debtor, because the debtor remained liable. Britton v. Thrailkill, 50 N.C. 331 [50 N.C. 229]; Rogers v. Rogers,51 N.C. 300; Combs v. Harshaw, 63 N.C. 198.
Where the promise is for the benefit of the promisor, and he has a personal, immediate, and pecuniary benefit in the transaction, as in Nealv. Bellamy, 73 N.C. 384, and in Dale v. Lumber Co., 152 N.C. 653, or where the promise to pay the debt of another is all or part of the consideration for property conveyed to the promisor, as in Hockaday v.Parker, 53 N.C. 17; Little v. McCarter, 89 N.C. 233; Deaver v. Deaver,137 N.C. 242; Satterfield v. Kindley, 144 N.C. 455; or is a promise to make good notes transferred in payment of property, as in Adcock v.Fleming, 19 N.C. 225; Ashford v. Robinson, 30 N.C. 114, and in Rowlandv. Rorke, 49 N.C. 337, the promise is valid although in parol.
If, however, the promise does not create an original obligation, and it is collateral, and is merely superadded to the promise of another to pay the debt, he remaining liable, the promisor is not liable, unless there is a writing; and this is true whether made at the time the debt is created or not. Smithwick v. Shepherd, 49 N.C. 197; Bagley v. Sasser, 55 N.C. 350;Scott v. Bryan, 73 N.C. 582; Rowland v. Barnes, 81 N.C. 239; Haun v.Burrell, 119 N.C. 547; Garrett-Williams Co. v. Hamill, 131 N.C. 59;Sheppard v. Newton, 139 N.C. 535, and Supply Co. v. Finch, 147 N.C. 106.
In our opinion, this case falls within the last class.
There is no evidence of benefit to the intestate, and while the jury would have been justified in finding from the evidence that he (559) promised to pay, it is not sufficient to sustain a finding that it was more than a promise to pay the debt of Cook, for which he (Cook) remained liable.
The verified account and the evidence of the plaintiff were competent to prove the indebtedness of Cook, as neither involved a transaction or conversation with the deceased, and there would be error in their exclusion, which would entitle the plaintiff to a new trial, if there was evidence of a valid promise of the intestate to pay.
It was because his Honor thought there was no such evidence that he ruled as he did, and we concur in his opinion.
The definition of a promise to answer for the debt of another, which is not enforcible, adopted in our Court and applicable here, is: "An undertaking by a person not before liable, for the purpose of securing or performing the same duty for which the party for whom the undertaking is made continues liable." Sheppard v. Newton, supra. Tested by this rule, we think the action cannot be maintained. *Page 451 
The account began on 22 February, 1906, and ended 27 March, 1907. The witness for the plaintiff, Bryant, testified that about the time of the last date (27 March, 1907) the plaintiff told him not to let Cook have any more goods without a written order from Powell, and that Cook had no credit at that time. The inference is that Cook had credit prior to the time, and no goods were afterwards sold to him. It is true that same witness also said that for all goods sold to Cook, credit was extended to Powell; and this would be entitled to great weight if he had stated something said or done by Powell authorizing the extension of credit. A similar statement was made by a witness in Garrett-Williams Co. v. Hamill, 131 N.C. 59, and was held insufficient to charge the promisor.
Again he says, in July, 1906, he heard Powell tell the plaintiff to let Cook have goods, and he would see that they were paid for. He does not state whether or not any goods were sold to Cook at that time, and so far as we can see, the promise related to a single transaction, and there is no evidence that it is embraced in the account sued on.
We would not be justified in giving such a promise both a (560) retrospective and prospective construction, to include the part of the account before the promise and that part made after it.
The evidence of the witnesses Brewer and Bishop does not show liability on the part of the intestate.
The most material statement made by either is by Brewer: "That in March, 1906, he was at Powell's house and saw some one going out the gate, and that he asked Mr. Powell who it was and he replied that it was Charlie Peele, who had been to see him about Cook's account, and that he told him that it was all right."
We will assume that "him," as last used, applies to Peele, although it is not certain; but, if so, it was "Cook's account" that was all right, and there is no suggestion in the evidence that Cook was not liable therefor. Suppose he had said, "Cook owes Peele an account, and I have promised to pay it.'. No one would contend that this would create a legal liability, and the evidence is not as strong as this.
The action is against the estate of a deceased person. The intestate lived one year and eight months after the last item in the account, and no action was instituted against him during this period. The defendant administratrix has no personal knowledge of the transactions, and death has destroyed any opportunity of replying to the evidence of the plaintiff. Under these circumstances the evidence should be carefully examined, and if it does not conform to the requirements of the law, it should be so declared.
The ledger and day-book of the plaintiff were properly excluded, as they were mere declarations of the plaintiff in his own interest. Bank *Page 452 v. Clark, 8 N.C. 36; Bland v. Warren, 65 N.C. 374; Dyeing Co. v.Hosiery Co., 126 N.C. 294.
We find
No error.